IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FINNAVATIONS LLC,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>PAYONEER INC.,<br><br>　　　　　　Defendant. | C. A. No. 1:18-cv-00444-RGA<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT PAYONEER INC.'S OPENING BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

　　　　　　　　　　　　　　　　　　　FISH & RICHARDSON P.C.
　　　　　　　　　　　　　　　　　　　Jeremy D. Anderson (#4515)
　　　　　　　　　　　　　　　　　　　222 Delaware Avenue, 17th Floor
　　　　　　　　　　　　　　　　　　　Wilmington, Delaware 19801
　　　　　　　　　　　　　　　　　　　(302) 652-5070 (Telephone)
　　　　　　　　　　　　　　　　　　　(302) 652-0607 (Facsimile)
　　　　　　　　　　　　　　　　　　　janderson@fr.com

　　　　　　　　　　　　　　　　　　　Neil J. McNabnay
　　　　　　　　　　　　　　　　　　　David B. Conrad
　　　　　　　　　　　　　　　　　　　Ricardo J. Bonilla
　　　　　　　　　　　　　　　　　　　Michael A. Vincent
　　　　　　　　　　　　　　　　　　　1717 Main Street, Suite 5000
　　　　　　　　　　　　　　　　　　　Dallas, Texas 75201
　　　　　　　　　　　　　　　　　　　(214) 747-5070 (Telephone)
　　　　　　　　　　　　　　　　　　　(214) 747-2091 (Facsimile)
　　　　　　　　　　　　　　　　　　　mcnabnay@fr.com
　　　　　　　　　　　　　　　　　　　conrad@fr.com
　　　　　　　　　　　　　　　　　　　rbonilla@fr.com
　　　　　　　　　　　　　　　　　　　vincent@fr.com

　　　　　　　　　　　　　　　　　　　ATTORNEYS FOR DEFENDANT
　　　　　　　　　　　　　　　　　　　PAYONEER INC.

**TABLE OF CONTENTS**

Page

I. NATURE AND STAGE OF THE PROCEEDINGS ....................................................... 1

II. SUMMARY OF ARGUMENT ..................................................................................... 1

III. STATEMENT OF THE FACTS .................................................................................... 1

IV. LEGAL STANDARD .................................................................................................... 3

V. ARGUMENT ................................................................................................................. 6

    A. *Alice* Step One: The '755 Patent is Direct to an Abstract Idea. .............................. 6

        1. A Financial Assistant is an Abstract Idea. .................................................. 6

        2. Because A Financial Assistant as Claimed is Untethered to a Specific Implementation, it is Abstract. .................................................... 8

        3. Because the '755 Patent's Claims Are Not Directed to a Specific Improvement in a Computer's Capabilities, They Are Abstract. ............. 10

    B. *Alice* Step Two: The '755 Patent's Claims Only Implement the Abstract Idea Using Generic Computer Technology, Add Nothing Inventive, and Are Therefore Patent-Ineligible. .................................................... 11

        1. The Independent Claims Add Nothing Inventive. .................................... 11

        2. The Dependent Claims Add Nothing Inventive. ...................................... 13

VI. CONCLUSION ............................................................................................................ 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Affinity Labs of Tex. v. DIRECTV, LLC,*
    838 F.3d 1253 (Fed. Cir. 2016) ..................................................................................12, 14, 15

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
    134 S. Ct. 2347 (2014) ............................................................................................... *passim*

*Apple, Inc. v. Ameranth, Inc.,*
    842 F.3d 1229 (Fed. Cir. 2016) ........................................................................................4, 12, 14

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..................................................................................................................6, 7

*Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC,*
    827 F.3d 1341 (Fed. Cir. 2016) ................................................................................................15

*Bilski v. Kappos,*
    561 U.S. 593 (2010) ................................................................................................... *passim*

*buySAFE, Inc. v. Google, Inc.,*
    765 F.3d 1350 (Fed. Cir. 2014) ................................................................................................10

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
    776 F.3d 1343 (Fed. Cir. 2014) ................................................................................7, 9, 10, 11

*Cuvillier v. Sullivan,*
    503 F.3d 397 (5th Cir. 2007) ......................................................................................................7

*CyberSource Corp. v. Retail Decisions, Inc.,*
    654 F.3d 1366 (Fed. Cir. 2011) ..............................................................................................8, 10

*DDR Holdings, LLC v. Hotels.com, L.P.,*
    773 F.3d 1245 (Fed. Cir. 2014) ................................................................................................15

*Dealertrack, Inc. v. Huber,*
    674 F.3d 1315 (Fed. Cir. 2012) ..........................................................................................12, 15

*Diamond v. Chakrabarty,*
    447 U.S. 303 (1980) ....................................................................................................................7

*Elec. Power Group, LLC v. Alstom S.A.,*
    830 F.3d 1350 (Fed. Cir. 2016) ..........................................................................................12, 14

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016)..................................................................................13, 14

*FairWarning IP, LLC v. Iatric Sys.*,
   839 F.3d 1089 (Fed. Cir. 2016)..........................................................................................14

*Fort Props., Inc. v. Am. Master Lease LLC*,
   671 F.3d 1317 (Fed. Cir. 2012)............................................................................................8

*Genetic Techs. Ltd. v. Merial L.L.C.*,
   818 F.3d 1369 (Fed. Cir. 2016)............................................................................................7

*Gibbs v. Coupe*,
   No. 14-790-SLR, 2015 U.S. Dist. LEXIS 150712 (D. Del. Nov. 6, 2015) ..............................6

*Gottschalk v. Benson*,
   409 U.S. 63 (1972)................................................................................................................8

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015).........................................................................................14

*Intellectual Ventures I LLC v. Symantec Corp.*,
   838 F.3d 1307 (Fed. Cir. 2016).............................................................................12, 14, 15

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   132 S. Ct. 1289 (2012).........................................................................................................8

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
   837 F.3d 1299 (Fed. Cir. 2016)..................................................................................13, 14

*Motivation Innovations, LLC v. Petsmart, Inc.*,
   156 F. Supp. 3d 558 (D. Del. 2016)......................................................................................4

*Synopsys, Inc. v. Mentor Graphics Corp.*,
   839 F.3d 1138 (Fed. Cir. 2016)..........................................................................................15

*In re TLI Commc'ns LLC Patent Litig.*,
   823 F.3d 607 (Fed. Cir. 2016)....................................................................................12, 13

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring)........................................................7

*Visual Memory LLC v. NVIDIA Corp.*,
   867 F.3d 1253 (Fed. Cir. 2017)..........................................................................................13

*Wilmoth v. Sec'y of N.J.*,
   No. 17-1925, 2018 U.S. App. LEXIS 9826 (3d Cir. Apr. 19, 2018) .......................................6

**Statutes**

35 U.S.C. § 101 .................................................................................................................4, 7

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ..........................................................................................................6

I.  **NATURE AND STAGE OF THE PROCEEDINGS**

On March 23, 2018, Finnavations LLC ("Finnavations" or "Plaintiff") filed its Complaint alleging that Payoneer Inc. ("Payoneer" or "Defendant") infringes "at least Claims 9 and 17" of U.S. Patent No. 9,569,755 (the "'755 Patent") by "making, using, importing, selling, and/or offering for sale a financial management system." (D.I. 1 at ¶ 13.) No *Markman* hearing or trial dates have been calendared.

II.  **SUMMARY OF ARGUMENT**

Finnavations' Complaint should be dismissed because the '755 Patent is ineligible under 35 U.S.C. § 101. The claims fail to meet § 101's threshold eligibility requirement because (1) they are directed to the abstract idea of a financial assistant; and (2) they merely recite this abstract idea as a desired outcome without stating how to implement it, other than using generic functionality performed by a conventional computer components. In recent years, the Supreme Court, the Federal Circuit, and this Court have all routinely invalidated similarly flawed patents under § 101. *See, e.g.*, *Bilski*, 561 U.S. 593; *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229 (Fed. Cir. 2016); *Motivation Innovations, LLC v. Petsmart, Inc.*, 156 F. Supp. 3d 558 (D. Del. 2016). The '755 Patent should likewise be invalidated because its claims are directed not to any improvement in computer technology, but rather to routine and common tasks long performed by humans, and use conventional computer components merely as tools to perform these basic tasks.

III.  **STATEMENT OF THE FACTS**

The '755 Patent, issued on February 14, 2017, is entitled "Financial Management System," and describes a system "designed to facilitate the recordkeeping associated with online transactions." '755 Patent, 1:14–15. The '755 Patent concedes that offline financial recordkeeping is an age-old practice, where "when a user is not online, the user generally receives a receipt upon the completion of a credit card transaction which is a physical printout including various

transaction data." *Id.* at 1:25–28. The '755 Patent acknowledges that in the offline world, in order to maintain accurate financial records, or "to ensure that the merchants properly billed the credit card holder . . . many users retain the receipt." *Id.* at 1:35–37. Then, a user can reconcile his or her transactions using these receipts, or perhaps employ one of "[a] number of computer based financial management systems [that] have been developed having at least a partial purpose of simplifying the method of keeping track of various financial information." *Id.* at 1:37–40. The '755 Patent sought to migrate these conventional offline financial business practices to the Internet because purportedly "the present financial management systems provide neither a mechanism for creating reminders for financial transactions consummated online, nor for directly entering information associated with online transactions . . . and fail to store information about the particular items purchased and the costs of the particular items," like a paper receipt would do. *Id.* at 1:54–61.

The '755 Patent has two independent claims and 19 dependent claims, all directed to methods of communicating financial data. Asserted claim 9 is an exemplary claim:

> 9. A method of delivery of transaction data to a financial management program comprising:
>
> using a network device to conduct an online financial transaction with a commercial web server;
>
> searching, by a financial assistant on the network device, a set of transmitted data related to the online financial transaction;
>
> determining, by the financial assistant on the network device, whether the searched data comprises transaction data for the online financial transaction;
>
> when the searched data comprises transaction data in a first data structure compatible with conducting the online financial transaction, copying and storing, by the financial assistant on the network device, the transaction data and additional transaction data not included in the transmitted transaction data into in a second data structure compatible with the financial management program,

2

wherein the second data structure differs from the first data structure.

'755 Patent, 8:30–49.

Simply put, claim 9 recites a method of recordkeeping that requires (1) conducting a transaction; (2) searching, by a financial assistant, records related to the transaction; (3) determining, by the financial assistant, whether the records include transaction details; and, if they do, (4) recording, by the financial assistant, the transaction details, along with additional information, in a separate format. Claim 1, the other independent claim of the '755 Patent, is fundamentally similar to claim 9 with the minor additions that the financial assistant collects transaction data when it is sent, and transmits the copied transaction details and additional information to a "personal financial management program." The dependent claims add inconsequential limitations such as dictating when the financial assistant is employed (claims 2, 3); displaying additional information (claim 4); conducting unspecified analysis on the data (claim 5); accepting additional inputs (claims 6–8, 15); allowing repurchasing (claims 10–14); specifying the type of network device used (claims 16, 17); requiring an account number to be transmitted (claims 18, 19); and hosting the management program on a server (claims 20, 21).

## IV. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Wilmoth v. Sec'y of N.J.*, No. 17-1925, 2018 U.S. App. LEXIS 9826, at *7 (3d Cir. Apr. 19, 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In deciding a Rule 12(b)(6) motion, courts consider documents attached to or incorporated into the complaint as well as facts alleged in the complaint. *Gibbs v. Coupe*, No. 14-790-SLR, 2015 U.S. Dist. LEXIS 150712, at *3 (D. Del. Nov. 6, 2015). Although factual allegations are taken as true, legal

3

conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft*, 556 U.S. at 678 (noting tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (internal citations and quotations omitted).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu,* LLC, 772 F.3d 709, 718–19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1374 (Fed. Cir. 2016) ("[C]laim construction is not an inviolable prerequisite to a validity determination under § 101.") (brackets in original, internal citations and quotations omitted). For § 101 purposes, all claims of a patent can be evaluated collectively based on a representative claim if they are all "substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (invalidating 242 claims across four patents based on two representative claims).

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. The law also recognizes three exceptions to patent eligibility, including "abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980). Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. See *Bilski*, 561 U.S. at 611–12.

4

In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted).

Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). Indeed, if a claim could be performed in the human mind, or by a human using pen and paper, it is not patent-eligible. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). Also, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297–98, 1300–01.

Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; see also *Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope.").

5

V.   **ARGUMENT**

A.   *Alice* **Step One: The '755 Patent is Direct to an Abstract Idea.**

1.   **A Financial Assistant is an Abstract Idea.**

When the '755 Patent's claims are stripped of their software implementation details, the gist of the claims is a financial assistant—an abstract idea ineligible for patent protection. Financial recordkeeping is an activity "humans have always performed," *Content Extraction*, 776 F.3d at 1347—a basic tool in the "storehouse of knowledge" that is "free to all . . . and reserved exclusively to none." *Bilski*, 561 U.S. at 602. Having an assistant perform this task is also not a new idea. That the method claimed by the '755 Patent requires the use of computers and multiple steps does not make the claims any less abstract. Take for example financial recordkeeping in the context of recording a credit card transaction.

| CLAIM 9 | RECORDING A CREDIT CARD TRANSACTION |
|---|---|
| 9. A method of delivery of transaction data to a financial management program comprising: | A method of financial recordkeeping comprising: |
| using a network device to conduct an online financial transaction with a commercial web server; | purchasing something; |
| searching, by a financial assistant on the network device, a set of transmitted data related to the online financial transaction; | searching, by an assistant, among papers received during the purchase; |
| determining, by the financial assistant on the network device, whether the searched data comprises transaction data for the online financial transaction; | locating the credit card receipt; |
| when the searched data comprises transaction data in a first data structure compatible with conducting the online financial transaction, | writing information on the credit card receipt into a ledger, with additional notes about the purchase; |

6

| CLAIM 9 | RECORDING A CREDIT CARD TRANSACTION |
|---|---|
| copying and storing, by the financial assistant on the network device, the transaction data and additional transaction data not included in the transmitted transaction data into in a second data structure compatible with the financial management program, | |
| wherein the second data structure differs from the first data structure. | where the ledger, of course, is not a credit card receipt. |

In essence, the "financial management program" is akin to a financial ledger on a computer, and the "financial assistant," is like someone that enters information into the ledger. As this comparison illustrates, the method claimed by the '755 Patent is no different from an activity humans have long performed—financial recordkeeping—except that the claimed method is automated using conventional computer technology. *See Alice*, 134 S. Ct. at 2359 (finding routine activity long performed by humans and simply implemented on a computer does not confer patentability).

The abstract concept of financial recordkeeping at the center of the '755 Patent claims is analogous to the economic practices that courts have held to be abstract and unpatentable. *See Bilski*, 561 U.S. at 611 (hedging); *Alice*, 134 S. Ct. at 2356, 2357 (intermediated settlement); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372-73 (Fed. Cir. 2011) (verifying the validity of a credit card transaction); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1354–55 (Fed. Cir. 2014) (transaction performance guaranty). It also is analogous to the abstract concepts of data collection, organization, and storage that courts have held to be patent ineligible.

Indeed the patent invalidated by the Federal Circuit in *Content Extraction*, 776 F.3d at 1347, bears a striking resemblance to the '755 Patent. There, the patent concerned extracting and collecting financial data from documents related to a transaction (*e.g.*, an ATM transaction), and

7

then storing the data in a computer. 776 F.2d at 1345-46. Applying *Alice* step one, the Federal Circuit found that "the claims of the asserted patents are drawn to the abstract idea of (1) collecting data, (2) recognizing certain data within the collected data set, and (3) storing that recognized data in a memory," and "the concept of data collection, recognition, and storage is undisputedly well-known. Indeed, humans have always performed these functions." *Id.* at 1347. The *Content Extraction* court also recognized, before finding the patent ineligible, that "banks have, for some time, reviewed checks, recognized relevant data such as the amount, account number, and identity of account holder, and stored that information in their records." 776 F.3d at 1347.

As in *Content Extraction*, the '755 Patent's attempt to claim financial recordkeeping relies on the recognized abstract concept of data collection and recognition. *See, e.g.,* '755 Patent, claim 9 ("searching . . . a set of transmitted data" and "determining . . . whether the searched data comprises transaction data"). Also as in *Content Extraction*, individuals have long carried out the abstract financial recordkeeping concepts embodied in the '755 Patent claims. In fact, there is nothing in the '755 Patent claims that makes them any less abstract than those at issue in *Content Extraction*.

> 2. **Because A Financial Assistant as Claimed is Untethered to a Specific Implementation, it is Abstract.**

The '755 Patent does not disclose any special or improved way of using a financial assistant, and no specific hardware configuration is required. To the contrary, it calls for generic components that are functionally-defined and may be implemented in any number of ways. For example, the invention comprises a "network device" that could be "a computer terminal, a Personal Digital Assistant (PDA), an interactive pager, a cell-phone, or other communication device." '755 Patent at 3:5–8. The only other hardware required, a "commercial web server," is

similarly ill-defined as "a server that enables a commercial web site, such as NetGrocer™ or Amazon.com™, to conduct online transactions." '755 Patent at 3:10–12.

The abstract concept at the heart of the '755 Patent "does not become nonabstract" merely because the claims involve the "technological environment" of conventional components and the use of standard communications systems. *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1319 (Fed. Cir. 2016) (citation omitted) ("*IV-Symantec*"); *see also Alice*, 134 S. Ct. at 2358. In *TLI*, the Federal Circuit observed that although the representative claim required "concrete, tangible components such as 'a telephone unit' and a 'server,' the specification [made] clear that the recited physical components merely provide a generic environment in which to carry out the abstract idea of classifying and storing digital [data] in an organized manner." *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 614 (Fed. Cir. 2016).

Moreover, like other computer-implemented claims found patent-ineligible, the '755 Patent merely claims a desired result without explaining "how this would be technologically implemented"—the claims specify no "particular way of programming or designing the software." *Ameranth*, 842 F.3d at 1241. Instead, they contain broad functional language and only recite a desired goal of recording financial data. Such "vague, functional" terms, "devoid of technical explanation as to how to implement the invention" in any non-conventional way, cannot confer eligibility. *TLI*, 823 F.3d at 615; *see also*, *e.g.*, *Elec. Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016); *Affinity Labs of Tex. v. DIRECTV, LLC, 838 F.3d 1253, 1265 (Fed. Cir. 2016)*; *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012).

For example, the financial assistant "is responsible for transmitting transaction data to the personal financial management program, and archiving the transaction data for further purchases and analysis." '755 Patent at 3:14–17. Even though it performs the critical functions of the alleged

9

invention, nowhere in the '755 Patent is there any disclosure as to how the financial assistant does so. By simply stating that "[t]he Financial Assistant may be implemented in any type of executable code, including C++, Java, and VB Script," the '755 Patent leaves it to the reader to figure out how to do so. *Id.* at 3:27–29.

### 3. Because the '755 Patent's Claims Are Not Directed to a Specific Improvement in a Computer's Capabilities, They Are Abstract.

The '755 Patent's claims do not purport to, nor are they intended to, improve the specific computer's function. The claims merely intend to improve financial recordkeeping for online transactions by borrowing entirely from the real-world process of using a financial assistant to enter financial data into a ledger or financial application. Thus, the '755 Patent's claims carry out their recited functions with the most routine of computer operations.

Three recent Federal Circuit cases finding claims patent-eligible at *Alice* step one are notably different from this case. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016); *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016); *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253 (Fed. Cir. 2017). In those cases, unlike here, the claims recited "specific . . . improvement[s] in computer capabilities." *Enfish*, 822 F.3d at 1336; *see also McRO*, 837 F.3d at 1313-14; *Visual Memory*, 867 F.3d at 1258 (finding that "claims focus on a 'specific asserted improvement in computer capabilities'—the use of programmable operational characteristics that are configurable based on the type of processor—instead of 'on a process that qualifies as an "abstract idea" for which computers are invoked merely as a tool'") (citation omitted).

Here, the '755 Patent "fails to provide any technical details for the tangible components" and "instead predominantly describes the system and methods in purely functional terms" using nothing more than conventional computer components and non-specified software routines. *TLI*,

10

823 F.3d at 612 (distinguishing *Enfish*); *see also FairWarning IP, LLC v. Iatric Sys.*, 839 F.3d 1089, 1094 (Fed. Cir. 2016) (distinguishing *McRO* and *Enfish*); *IV-Symantec*, 838 F.3d at 1313-14, 1315, 1321, n.5 (same); *Affinity Labs-DirecTV*, 838 F.3d at 1262 (same); *Ameranth*, 842 F.3d at 1241 (distinguishing *McRO*). As discussed above, here the claimed steps and components "do no more than describe a desired function or outcome, without providing any limiting detail" to "confine[] the claim to a particular solution." *Affinity Labs-DirecTV*, 838 F.3d at 1269. The '755 Patent does not purport to claim any new computer capability, but rather relies on use of the well-known capabilities of computers, as discussed above. That is, the claims of the '755 Patent do not recite "an improvement in computers as tools," but instead "use computers as tools" to perform the abstract idea of financial recordkeeping. *See Elec. Power*, 830 F.3d at 1354.

> **B.**   *Alice* **Step Two: The '755 Patent's Claims Only Implement the Abstract Idea Using Generic Computer Technology, Add Nothing Inventive, and Are Therefore Patent-Ineligible.**
>
> **1.**   **The Independent Claims Add Nothing Inventive.**

Independent claims 1 and 9 of the '755 Patent merely recite performing an abstract idea using conventional computer functions: running a program, searching information, copying information, translating information, and transmitting information. Such steps are "basic functions of a computer" and do not make the claims eligible. *See Alice*, 134 S. Ct. at 2359-60 (citation omitted).

Courts have repeatedly found such functions non-inventive. In *Alice*, for example, the Supreme Court held that claims reciting a "data processing system" with a "communications controller" for obtaining, modifying, and transmitting data was non-inventive. *Alice*, 134 S. Ct. at 2359-60. The Federal Circuit also has held similar basic computer functions to be insufficient to confer eligibility. *See, e.g.*, *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367-71 (Fed. Cir. 2015) (using an "interactive interface" and "break[ing down] and organiz[ing]

11

. . . data according to some criteria" and monitoring data is non-inventive); *Dealertrack*, 674 F.3d at 1333 (finding "selectively forwarding" information and forwarding reply data is non-inventive).

Even when these basic functions are viewed "as an ordered combination," they do not reveal a "non-conventional and non-generic arrangement of known, conventional pieces" that might provide an inventive concept. *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016); *see also DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014) (explaining that the claims at issue involved a technological solution that overcame a specific challenge unique to the Internet). Unlike the handful of particular enhancements to computer technology (or application of the abstract idea to improve another technology or process) that the Federal Circuit has found eligible at *Alice* step two, the claims here merely apply an "old solution" (recording financial data) in a computer environment without specifying any non-conventional way to accomplish or practice the idea. *See Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151-52 (Fed. Cir. 2016) (distinguishing *DDR* and *Bascom*); *IV-Symantec*, 838 F.3d at 1321 (same); *Affinity Labs-DirecTV*, 838 F.3d at 1261–62, 1265 (same).

The predominate software functionality claimed in the '755 Patent—recording financial data—is precisely that found to be non-inventive by the Supreme Court in *Alice*. In particular, the *Alice* court held that using a computer to "create and maintain 'shadow' accounts amounts to **electronic recordkeeping—one of the most basic functions of a computer**." *Alice*, 134 S. Ct. at 2359 (emphasis added). Further, the *Alice* court held that computer functionality "to obtain data, adjust account balances, and issue automated instructions" was well-understood, routine and conventional activity previously known to the industry. *Id.* The '755 Patent recites the same

electronic recordkeeping and data collection functionality as the patent at issue in *Alice*, and thus likewise fails to supply any inventive concept.

### 2. The Dependent Claims Add Nothing Inventive.

The additional limitations in the dependent claims do not confer patent-eligibility because they recite either token post-solution limitations or elements performed by computing elements that are "purely conventional," merely requiring "a generic computer to perform generic computer functions." *Alice*, 134 S. Ct. at 2359. Specifically:

- claims 2 and 3 specify when the financial assistant is employed;
- claim 4 calls for displaying additional information;
- claim 5 requires conducting an undefined analysis on the data;
- claims 6–8 and 15 require accepting additional inputs;
- claims 10–14 require the network device to be configured to repurchase items by way of an unspecified software routine;
- claims 16 and 17 restrict the type of network device used;
- claims 18 and 19 require an account number to be transmitted; and
- claims 20 and 21 involve hosting the management program on a server.

These trivial limitations cannot confer patent eligibility. *See, e.g.*, *Bilski*, 561 U.S. at 612 ("[L]imiting an abstract idea to one field of use or adding token post-solution components d[oes] not make the concept patentable[.]").

### VI. CONCLUSION

For the foregoing reasons, Payoneer respectfully requests that the Court dismiss the Complaint for failure to state a claim upon which relief can be granted. Because leave to amend would be futile, Payoneer respectfully requests dismissal with prejudice.

| | |
|---|---|
| Dated: May 16, 2018 | FISH & RICHARDSON P.C.<br><br>By: */s/ Jeremy D. Anderson*<br>Jeremy D. Anderson (#4515)<br>222 Delaware Avenue, 17th Floor<br>Wilmington, Delaware 19899-1114<br>(302) 652-5070 (Telephone)<br>(302) 652-0607 (Facsimile)<br>janderson@fr.com<br><br>Neil J. McNabnay<br>David B. Conrad<br>Ricardo J. Bonilla<br>Michael A. Vincent<br>1717 Main Street, Suite 5000<br>Dallas, Texas 75201<br>(214) 747-5070 (Telephone)<br>(214) 747-2091 (Facsimile)<br>mcnabnay@fr.com<br>conrad@fr.com<br>rbonilla@fr.com<br>vincent@fr.com<br><br>ATTORNEYS FOR DEFENDANT<br>PAYONEER INC. |