IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FINNAVATIONS LLC,<br><br>        Plaintiffs,<br><br>  v.<br><br>PAYONEER INC.,<br><br>        Defendant. | C. A. No. 1:18-cv-00444-RGA<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT PAYONEER INC.'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

FISH & RICHARDSON P.C.
Jeremy D. Anderson (Bar No. 4515)
222 Delaware Avenue, 17th Floor
Wilmington, Delaware 19801
(302) 652-5070 (Telephone)
(302) 652-0607 (Facsimile)
janderson@fr.com

Neil J. McNabnay
David B. Conrad
Ricardo J. Bonilla
Michael A. Vincent
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
mcnabnay@fr.com
conrad@fr.com
rbonilla@fr.com
vincent@fr.com

ATTORNEYS FOR DEFENDANT
PAYONEER INC.

Dated: July 9, 2018

# TABLE OF CONTENTS

**Page**

I.   THE '755 PATENT'S CLAIMS ARE INELIGIBLE UNDER § 101 ...............................1

　　A.   *Alice* Step 1: The Claims Are Directed to an Abstract Idea ....................................1

　　　　1.   The claims are not directed to an improvement in computer capability......1

　　　　2.   The claims are abstract under Federal Circuit precedent............................4

　　B.   *Alice* Step 2: There is No Inventive Concept ..................................................6

II.  *BERKHEIMER* AND *AATRIX* ARE INAPPLICABLE .......................................................7

III. CONCLUSION..................................................................................................................9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    882 F.3d 1121 (Fed. Cir. 2018) .................................................................................... 1, 7, 8

*Affinity Labs of Tex. v. DIRECTV, LLC*,
    838 F.3d 1266 (Fed. Cir. 2016) ............................................................................................ 2

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014) ................................................................................................ passim

*Apple, Inc. v. Ameranth, Inc.*,
    842 F.3d 1229 (Fed. Cir. 2016) ....................................................................................... 4, 5

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018) .................................................................................... 1, 7, 8

*Collarity, Inc. v. Google Inc.*,
    No. 11-1103-MPT, 2015 WL 7597413 (D. Del. Nov. 25, 2015, Order) .............................. 5

*Credit Acceptance Corp. v. Westlake Servs.*,
    859 F.3d 1044 (Fed. Cir. 2017) ............................................................................................ 7

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) ............................................................................................ 5

*EMG Tech., LLC v. Etsy, Inc.*,
    No. 6:16-CV-00484-RWS-JDL, 2017 U.S. Dist. LEXIS 28805 (E.D. Tex. Jan.
    25, 2017) .............................................................................................................................. 5

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 ................................................................................................................... 2, 4

*Intellectual Ventures I LL v. Capital One Bank U.S.A.*,
    792 F.3d 1363 (Fed. Cir. 2015) ............................................................................................ 2

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
    850 F.3d 1332 (Fed. Cir. 2017) ............................................................................................ 7

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015) ....................................................................................... 3, 4

*Inventor Holdings, LLC v. Bed Bath & Beyond Inc.*,
    123 F. Supp. 3d 557 (D. Del. 2015) ..................................................................................... 2

*MacroPoint, LLC v. FourKites, Inc.*,
  No. 1:15-cv-1002, 2015 WL 6870118 (N.D. Ohio Nov. 6, 2015), *affirmed*,
  671 Fed. Appx. 780 (Fed. Cir. Dec. 8, 2016) ...............................................................6

*Microsoft Corp. v. i4i Ltd. Partnership*,
  564 U.S. 91 (2011) (Breyer, J., concurring) ................................................................7

*Versata Software, Inc. v. NetBrain Techs., Inc.*,
  No. 13-676-LPS-CJB, 2015 WL 5768938 (D. Del. Sept. 30, 2015, Report and
  Recommendation) ........................................................................................................7

*Zimmers v. Eaton Corp.*,
  No. 2:15-CV-2398, 2016 WL 4094870 (S.D. Ohio Aug. 2, 2016) ..............................6

**Statutes**

35 U.S.C. § 101 ...................................................................................................... 1, 3, 5, 6

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ..................................................................................................1, 8

Nothing in Finnavations' Response (Dkt. No. 17 ("Response")) successfully refutes Payoneer's showing that the claims of the '755 Patent are only directed to an abstract idea, and are thus ineligible under 35 U.S.C. § 101. Finnavations attempts to couch the claims in terms of an improvement to computer capability, but repeatedly neglects to explain how the claims achieve such an improvement. Instead, Finnavations can only discuss the '755 Patent's intentions and goals but never connects the dots between these claimed objectives and a specific implementation rooted in computer technology. The '755 Patent's claims are thus directed to an abstract idea.

The inventive concept conjured to rescue the claimed abstract idea also withers in the face of mild scrutiny. Finnavations relies on the financial assistant's copying and storing data as the saving inventive feature, but controlling precedent has already held such basic manipulation of data to be another abstract idea. Likewise, Finnavations' assertion that automation of human-capable activity is inventive is also refuted by Supreme Court and Federal Circuit precedent.

Finally, the Response's boilerplate recitation of *Berkheimer* and *Aatrix* is insufficient to prevent the Court from disposing of these ineligible claims on this Motion. Although some cases may involve factual disputes that would bar a Rule 12(b)(6) disposition, this is not one of those cases—Finnavations has alleged no questions in this case that would make such a delay necessary.

Because Finnavations' Response does not credibly deny that the '755 Patent's claims are directed to an abstract idea without more, Payoneer respectfully requests that the Court dismiss the Complaint for failure to state a claim upon which relief can be granted.

**I.  THE '755 PATENT'S CLAIMS ARE INELIGIBLE UNDER § 101**

    **A.  *Alice* Step 1: The Claims Are Directed to an Abstract Idea**

        **1.  The claims are not directed to an improvement in computer capability**

Finnavations' arguments that the '755 Patent's claims are "rooted in computer technology and improvements to a technological process" are unpersuasive. Resp. at 8. By Finnavations' own

admission, the claims are directed to a method of simply delivering data. *Id.* ("The claims are directed to a discrete method of delivering financial transaction data to a personal financial management computer program."). However, delivering data in an unspecified way is not an improvement to a computer's capabilities. Unlike *Enfish*, where a database with an unconventional structure resulted in "increased flexibility, faster search times, and smaller memory requirements," *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337, the '755 Patent's data delivery method offers no such improvement to computer functionality.

The only "improvement" that Finnavations claims is to "financial transaction processing methods by making certain transactional data available to a personal financial management program." Resp. at 9. This characterization undercuts Finnavations' own arguments because making data available to programs is essential to the conventional operation of every computer. Limiting the claim to "transactional data" and specifying the destination of a "personal financial management program" is of no moment because these are inconsequential limitations to a particular technological environment. *See Intellectual Ventures I LL v. Capital One Bank U.S.A.*, 792 F.3d 1363, 1366 (Fed. Cir. 2015) (an "abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment."). They are "the natural and expected steps ordinarily carried out by" computers operating conventionally. *See Inventor Holdings, LLC v. Bed Bath & Beyond Inc.*, 123 F. Supp. 3d 557, 562 (D. Del. 2015).

In an attempt to shore up this deficiency, Finnavations falls back on how the claimed method will "change the data structure" and asserts that this feature "is hardly an abstract idea." Resp. at 9. To the contrary, this is a quintessentially abstract idea because it does "no more than describe a desired function or outcome, without providing any liming detail that confines the claim to a particular solution to an identified problem." *Affinity Labs of Tex. v. DIRECTV, LLC*, 838 F.3d

1266, 1269 (Fed. Cir. 2016). Instead of explaining how the alleged invention changes data structures to enhance a computer's functionality, the '755 Patent only dictates that it does. By simply stating that "[t]he Financial Assistant may be implemented in any type of executable code, including C++, Java, and VB Script," the '755 Patent leaves it to the reader to figure out how to do so. '755 Patent at 3:27–29. This type of results-oriented claim language, without anything in the claims that explains how to achieve the result, is impermissible under § 101. *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (affirming the district court's finding that "claim 1 is directed to the idea itself" because "claim 1 contains no restriction on how the result is accomplished").

Because the '755 Patent's claims lack any substantive description of a means to achieve the claimed result, Finnavations must (and does) resort to conclusory assertions in its Response that do not change the § 101 analysis. For example, Finnavations claims that the invention's "objectives of enhancing and capturing transaction data in a financial management program are enabled, at least in part, by the ability of the system to allow transaction data to be added to the transaction data transmitted by the financial assistant, and change the collective data structure to a structure that is compatible with the financial management program. This is an improvement of a computer system . . . ." Resp. at 10–11. The argument then is that the invention's objective of modifying data is enabled by a system that can modify data. Finnavations does not and cannot explain *how* this objective is accomplished because the '755 Patent fails to provide any details that would save this claim for being directed to anything more than an abstract idea, much less claim those details.

Finnavations repeats this line of reasoning throughout its Response. When describing the overall system, Finnavations states that "[t]he '755 Patent application is directed to a system that

captures transaction data from different sources, enhances that data, and ensures that the data is compatible with a financial management program." *Id.* at 10. However, Finnavations does not offer any discussion of *how* the '755 Patent "captures transaction data," *how* it "enhances that data," or *how* it "ensures that the data is compatible" because it cannot: such descriptions are absent from the patent and its claims. *See id.* Instead of anchoring those abstract ideas to concrete implementations, Finnavations continues to outline the objectives of the invention as if the applicant's goals were a substitute for a specific implementation of the claimed abstract idea. *See id.* ("an objective of the invention is . . ."; "A related objective is . . .:' "The inventions objectives . . ."). These are merely claims of a desired result with "no disclosure of how this would be technologically implemented" such as a "particular way of programming or designing the software." *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241, 1244 (Fed. Cir. 2016); *see also Internet Patents*, 790 F.3d at 1348.

### 2. The claims are abstract under Federal Circuit precedent

Finnavations is correct that *Alice* and *Enfish* did not hold that software was unpatentable, and Payoneer does not argue otherwise. However, the '755 Patent's claims are invalid because they fail the Supreme Court's two-step test for patent-eligible subject matter, not because they are directed to software.

Finnavations cites *McRO* for the Federal Circuit's admonition to avoid oversimplifying claims and alleges that Payoneer engages in this by avoiding consideration of specific requirements. Resp. at 11–12. Incorrect. The claims are simplistic and abstract by their very nature, not due to any selective interpretation by Payoneer. For example, Finnavations alleges that the invention requires a "specially programmed system," but once again fails to discuss how the system is specially programmed in a way to differentiate it from a generic computer or where this "special programming" is present in the claims (it is not). The '755 Patent only provides flow

4

charts and pictures that describe the desired outcome, but no code or logic that would give the financial assistant a defined embodiment.

*DDR Holdings* also fails to shelter the '755 Patent. In *DDR Holdings*, the asserted claims were directed to "a problem specifically arising in the realm of computer networks" and addressed that problem with a concrete solution. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). In contrast, nowhere in the Response is there an explanation of a problem specific to computers that the '755 Patent sought to address. Further, the Response once again glosses over the specific implementation of that purported solution and instead cites a "graphical user interface." Resp. at 13. A graphical user interface is simply a medium for a human to control a program, but it has nothing to do with how the claimed financial assistant within that program operates, and courts have found graphical user interfaces to be patent-ineligible. *See, e.g.*, *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1244 (Fed. Cir. 2016) ("[T]he specification merely states that the user interface could permit linking of orders with customers, with no disclosure of how this would be technologically implemented"); *EMG Tech., LLC v. Etsy, Inc.*, No. 6:16-CV-00484-RWS-JDL, 2017 U.S. Dist. LEXIS 28805, at *18 (E.D. Tex. Jan. 25, 2017). Because the claims are not rooted in computer technology and do not address a problem with how computers operate, they are abstract.

Finally, the '755 Patent is not immunized from judicial scrutiny because an examiner also questioned its eligibility. *See, e.g., Collarity, Inc. v. Google Inc.*, No. 11-1103-MPT, 2015 WL 7597413, at *11 (D. Del. Nov. 25, 2015, Order) (rejecting patent owner's argument that the asserted patent should not be found invalid under § 101 because the USPTO issued a related patent after the *Alice* decision and noting that "[w]hether a claim is drawn to patent-eligible subject matter under 35 U.S.C. § 101 is a threshold inquiry to be determined as a matter of law [by the district

5

court] in establishing the validity of the patent" (alteration in original, quotation omitted)); *see also MacroPoint, LLC v. FourKites, Inc.*, No. 1:15-cv-1002, 2015 WL 6870118, at *3 (N.D. Ohio Nov. 6, 2015), *affirmed*, 671 Fed. Appx. 780 (Fed. Cir. Dec. 8, 2016) ("Contrary to plaintiff's argument, the fact that the PTO may have considered *Alice*-based guidelines before issuing the patents-in-suit does not mandate a finding that the patents are valid."); *Zimmers v. Eaton Corp.*, No. 2:15-CV-2398, 2016 WL 4094870, *4 n.1 (S.D. Ohio Aug. 2, 2016) (granting judgment on the pleadings that patents issued post-*Alice* were patent-ineligible under § 101). The examiner's arguments cited by Finnavations were cursory and did not have the benefit of recent case law and this Court's expertise in § 101 law. The Court should therefore give no deference to the Patent Office's allowance but should instead consider Payoneer's arguments on their own merits.

  B.  *Alice* **Step 2: There is No Inventive Concept**

  Finnavations argues that Claim 9 "recites two distinct components - a personal financial management program and a financial assistant." Resp. at 14. Not so. The "personal financial management program" is merely a destination for the method's result, not a constituent component of the method. The "personal financial management program" is mentioned twice in the claim, once in the preamble to define the destination and once in the fourth step to specify the second data structure's compatibility. Nowhere in the claim does this program perform any function or affect the way in which to carry out the method. Thus, Claim 9 only has one component, the "financial assistant," as Payoneer explained in its Motion.

  Finnavations identifies the financial assistant's functionality as the inventive concept key to saving the '755 Patent's claims. The operative passage that allegedly provides "something more" to the claimed abstract idea involves "copying and storing, by the financial assistant on the network device, the transaction data and additional transaction data not included in the transmitted transaction data into in a second data structure compatible with the financial management

program." Resp. at 14. But, if the inconsequential limitations to this particular technological environment are removed, all that is left is "copying and storing, by the financial assistant, the data and additional data into a second data structure." The Federal Circuit has already held that "organizing, displaying, and manipulating data" is an abstract idea. *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017). All that financial assistant does is manipulate data, so there is no inventive concept in the '755 Patent's claims.

Finnavations' final argument for an inventive step centers on the method's purported inability to be performed manually. The inventors argued during prosecution that the data manipulation occurs "without the need for a user to go back at a later date to add the information." Resp. at 15. Promoting the obviation of user input does not render the claim eligible because "mere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology." *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017); *see also Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2359 (2014) (finding routine activity long performed by humans and simply implemented on a computer does not confer patentability). Because the core feature is non-inventive, the '755 Patent's claims are directed to nothing more than the abstract idea of a financial assistant and are patent-ineligible.

## II. *BERKHEIMER* AND *AATRIX* ARE INAPPLICABLE

Finnavations cites the Federal Circuit's recent *Berkheimer* decision for the proposition that questions of fact can bar dismissal on a 12(b)(6) motion.[1] Response at 16 (citing *Berkheimer v. HP*

---

[1] Finnavations' contention that ineligibility must be established by clear and convincing evidence is also incorrect. The standard of proof applies only to factual questions, and Finnavations has not successfully raised any issues of fact. *See Microsoft Corp. v. i4i Ltd. Partnership*, 564 U.S. 91, 114 (2011) (Breyer, J., concurring) (noting that standard of proof has no application when addressing legal questions; *Versata Software, Inc. v. NetBrain Techs., Inc.*, No. 13-676-LPS-CJB, 2015 WL 5768938, *2 (D. Del. Sept. 30, 2015, Report and Recommendation) ("And as to the instant Motions, filed at the pleading stage (a stage at which any facts that might be in dispute are

*Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018)). *Berkheimer* does not save every abstract claim because, as the case itself notes, "not every 101 determination contains genuine disputes over the underlying facts material to the 101 inquiry." *Id.* Furthermore, the Federal Circuit advised that "[p]atent eligibility has in many cases been resolved on motions to dismiss or summary judgment" and that "[n]othing in [*Berkheimer*] should be viewed as casting doubt on the propriety of those cases." *Id.*

Finnavations also invokes *Aatrix* to reiterate that "questions of fact underline patent eligibility determinations." Resp. at 16. Again, this is not applicable to this case. Finnavations then mischaracterizes the Federal Circuit as having held that "Claim 1 of the '615 Patent met the requirement of patent eligibility." Resp. at 17. The Federal Circuit only found that the asserted claim was a system claim, and therefore fit "within one of the four statutorily provide categories of patent-eligible subject matter." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125–26 (Fed. Cir. 2018). The court did not "determine whether the claims at issue are directed to one of those patent-ineligible concepts[:]" "[l]aws of nature, natural phenomena, and abstract ideas." *Alice*, 134 S. Ct. at 2354–55. Because the claim's eligibility was still in question, the court remanded with the caution that "[n]othing in this opinion should be viewed as going beyond the Rule 12(b)(6) stage." *Aatrix*, 882 F.3d at 1130.

After having established the settled rule that factual disputes can preclude a Rule 12(b)(6) ruling, Finnavations fails to identify any such disputes. All Finnavations asserts is that "there are, at a minimum, underlying factual questions," but does not name a single one. *Id.* at 17. And it cannot do so because there are none. Payoneer's assertions regarding the lack of an inventive

---

to be construed in the light most favorable to the plaintiff), the 'clear and convincing' standard of proof should not come into play at all." (Burke, Mag. J.) (case later dismissed by the parties before the district judge could adopt the report and recommendation))

concept are grounded in the '755 Patent itself and not on any matters outside the pleadings. There thus exists nothing preventing the Court from ruling on the Motion now.

## III. CONCLUSION

For the foregoing reasons, Payoneer respectfully requests that the Court dismiss the Complaint for failure to state a claim upon which relief can be granted. Because leave to amend would be futile, Payoneer respectfully requests dismissal with prejudice.

| | |
|---|---|
| Dated: July 9, 2018 | FISH & RICHARDSON P.C.<br><br>By: */s/ Jeremy D. Anderson*<br>Jeremy D. Anderson (#4515)<br>222 Delaware Avenue, 17th Floor<br>Wilmington, Delaware 19899-1114<br>(302) 652-5070 (Telephone)<br>(302) 652-0607 (Facsimile)<br>janderson@fr.com<br><br>Neil J. McNabnay<br>David B. Conrad<br>Ricardo J. Bonilla<br>Michael A. Vincent<br>1717 Main Street, Suite 5000<br>Dallas, Texas 75201<br>(214) 747-5070 (Telephone)<br>(214) 747-2091 (Facsimile)<br>mcnabnay@fr.com<br>conrad@fr.com<br>rbonilla@fr.com<br>vincent@fr.com<br><br>ATTORNEYS FOR DEFENDANT<br>PAYONEER INC. |