**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **FINNAVATIONS LLC,**<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>**PAYONEER INC.,**<br><br>　　　　Defendant. | C.A. No. 1:18-cv-00444-RGA |

**PAYONEER INC.'S BRIEF IN SUPPORT OF ITS
<u>MOTION FOR EXCEPTIONAL CASE</u>**

<div style="margin-left:40%">

FISH & RICHARDSON P.C.
Jeremy D. Anderson (DE # 4515)
222 Delaware Avenue, 17th Floor
Wilmington, Delaware 19801
(302) 652-5070 (Telephone)
(302) 652-0607 (Facsimile)
janderson@fr.com

Neil J. McNabnay
David B. Conrad
Ricardo J. Bonilla
Michael A. Vincent
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
mcnabnay@fr.com
conrad@fr.com
rbonilla@fr.com
vincent@fr.com

**COUNSEL FOR DEFENDANT
PAYONEER INC.**

</div>

**TABLE OF CONTENTS**

I. STATEMENT OF FACTS ................................................................................................. 1

   A. Procedural Posture ..................................................................................................... 1

   B. The Hearing on the § 101 Motions to Dismiss .......................................................... 1

   C. The Court's Order Invalidating the Asserted Patent................................................... 3

II. LEGAL STANDARD......................................................................................................... 4

III. ARGUMENT...................................................................................................................... 5

   A. The Substantive Strength of Finnavations' Position was Exceptionally Weak. .................. 5

      1. Finnavations ignored the plethora of Federal Circuit cases holding similar claims patent-ineligible. ........................................................................................... 5

      2. Courts have recognized the need to deter pursuit of similarly meritless claims. ........ 8

      3. An exceptional finding determination would advance considerations of compensation and deterrence ............................................................................... 9

   B. Payoneer is Entitled to its Attorneys' Fees for Defending a Meritless Case. .................... 12

IV. CONCLUSION................................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alice Corp. Pty. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014)................................................................................................... *passim*

*Automated Bus. Cos. v. NEC Am., Inc.*,
    202 F.3d 1353 (Fed. Cir. 2000).................................................................................................9

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can. (U.S.)*,
    687 F.3d 1266 (Fed. Cir. 2012).................................................................................................7

*Bilski v. Kappos*,
    561 U.S. 593 (2010)...........................................................................................................3, 5, 9

*buySAFE, Inc. v. Google, Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014).................................................................................................5

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
    No. 4:17-CV-5928-YGR, 2018 WL 3328164 (N.D. Cal. July 6, 2018)............................10, 11

*Commil USA, LLC v. Cisco Sys., Inc.*,
    135 S. Ct. 1920 (2015)..........................................................................................................9, 10

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014)..............................................................................................3, 6

*Credit Acceptance Corp. v. Westlake Servs.*,
    859 F.3d 1044 (Fed. Cir. 2017).................................................................................................5

*DDR Holdings, LLC v. Hotels.com*,
    773 F.3d 1245 (Fed. Cir. 2014).........................................................................................4, 7, 8

*eDekka LLC v. 3Balls.com, Inc.*,
    2015 WL 9225038 (E.D. Tex. Dec. 17, 2015)...........................................................8, 10, 11, 12

*Elec. Power Group, LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)..............................................................................................6, 7

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016).........................................................................................4, 7, 8

*Intellectual Ventures I LLC v. Capital One Financial Corp.*,
    850 F.3d 1332 (Fed. Cir. 2017).................................................................................................6

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
    876 F.3d 1372 (Fed. Cir. 2017)......................................................................................7, 8, 12

*Kirtsaeng v. John Wiley & Sons*,
    136 S. Ct. 1979 (2016)................................................................................................................10

*My Health, Inc. v. ALR Techs., Inc.*,
    2017 WL 6512221 (E.D. Tex. Dec. 19, 2017)..........................................................................8

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545 (2014)...........................................................................................................4, 5, 9

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    788 F.3d 1359 (Fed. Cir. 2015)..................................................................................................5

*SAP America, Inc. v. InvestPic, LLC*,
    No. 3:16-cv-02689, 2018 WL 993854 (N.D. Tex. Feb. 21, 2018) ............................................8

*In re TLI Comm'cns*,
    823 F.3d 607 (Fed. Cir. 2016)....................................................................................................6

*Two-Way Media Ltd. v. Comcast Cable Comm'cns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017)..................................................................................................6

*Venen v. Sweet*,
    758 F.2d 117 (3d Cir. 1985).....................................................................................................12

*West View Research, LLC v. Audi AG*,
    685 F. App'x 923 (Fed. Cir. 2017) ............................................................................................6

**Statutes**

35 U.S.C. § 101............................................................................................................... *passim*

35 U.S.C. § 285.....................................................................................................................1, 4, 7, 9

The Supreme Court and Federal Circuit have made clear that claims directed to fundamental financial principles or pure data manipulation are ineligible. Despite this, Finnavations asserted claims directed to a 7,000-year-old accounting principle performed on a generic computer using conventional data manipulation techniques, thereby implicating both categories of ineligible concepts. Finnavations' decision to assert objectively ineligible claims in the face of clear precedent makes this an exceptional case under 35 U.S.C. § 285. Litigants should be deterred from filing similar lawsuits in the future, and Payoneer should be compensated for (correctly) standing on its rights and defending itself against claims that should never have been filed. Payoneer respectfully requests that the Court grant its motion, find this case exceptional, and award its attorneys' fees.

I.  **STATEMENT OF FACTS**

   A.  **Procedural Posture**

Finnavations LLC filed its Complaint against Payoneer Inc. on March 23, 2018, for infringement of U.S. Patent No. 9,569,755. (D.I. 1). On May 16, Payoneer filed a Motion to Dismiss for Failure to State a Claim based on ineligibility of the '755 Patent under 35 U.S.C. § 101. (D.I. 7, 8). Stitch Labs, Inc., a defendant in a related case on the same '755 Patent, filed a similar motion. (1:18-cv-00445, D.I. 9, 10). The Court heard argument on the motions on October 24, and subsequently granted them on November 26, holding that "each of the claims of the '755 Patent are directed to unpatentable subject matter." (D.I. 22 at 10).

   B.  **The Hearing on the § 101 Motions to Dismiss**

Finnavations' performance at the Court's hearing on the motions to dismiss highlights the baselessness of its claims. Just like in its briefing, Finnavations was unable to articulate how the '755 Patent was directed to anything other than the abstract idea of bookkeeping performed on a

generic computer. Finnavations could not even describe the alleged invention in a non-abstract way, but had to resort to regurgitating the jargon of the claim:

> **THE COURT**: Well, let me stop you here. What's the invention here?
>
> **MR. JOHNSON**: Well, the heart of the invention is taking data from a financial transaction and having that received at one component in the system, the financial assistant, and then adding data to that, and changing the data structure from a first structure to a second structure. The first structure being compatible with the online transaction.

Ex. A (Mot. Hrg.) at 27:6–24. After several minutes of the Court unpacking this explanation, Finnavations eventually conceded that "changing the data structure" was the key claimed idea:

> **MR. JOHNSON**: . . . I mean, there's certain things that a computing platform does that are generic with respect to data. But ***changing the data structure***, the structure of the data itself from a first structure to a second structure for compatibility purposes here, compatibility purposes there is not generic. ***That's the point we're making***.
>
> **THE COURT**: Okay. I mean, but when you say the point you're making, ***that's basically the hook on which you're either going to rise or fall on this 101 motion***?
>
> **MR. JOHNSON**: ***I'd say that's the primary hook***. I mean, there's --
>
> **THE COURT**: Okay.
>
> **MR. JOHNSON**: Excuse me. Again, we have our other elements that we refer to, but ***that's the one that I think is most important and critical in this case***.

*Id.* at 33:2–16 (emphasis added). However, Finnavations admitted that instructions for "changing the data structure"—the alleged innovation that is "most important and critical in this case"—are nowhere to be found in the claims:

> **MR. JOHNSON**: So we have to change the structure from a first data structure to a second data structure --
>
> **THE COURT**: Does the --

2

>**MR. JOHNSON**: -- so the program can deal with it.
>
>**THE COURT**: Does the claim say how you deal with it?
>
>**MR. JOHNSON**: No. *The claim itself does not say how you deal with it.*

*Id.* at 28:10–18 (emphasis added). And finally, when given an opportunity to show where the specification explains how to change the data structure, the best Finnavations could cite to were two passages that describe the idea, but not how to achieve it. *Id.* at 30:17–31:14 (referencing the below excerpts).

> Another aspect of the present invention relates to the creation of a transaction data file that can be used to update information stored on a personal financial management program. ('755 Patent at 2:4–7)
>
> The user is allowed to associate additional data with the transaction data, including a notes field and a category. Upon entering the desired information, the transaction data is submitted to a personal financial management program. ('755 Patent at 2:35–39)

Finnavations concluded its argument by claiming that its position was supported by several cases, but could not explain how. Mot. Hrg. at 36:20–37:2.

  **C.**  **The Court's Order Invalidating the Asserted Patent**

Shortly after the hearing, the Court issued its ruling and invalidated all claims of the '755 Patent. (D.I. 22 (Order) at 10). In its *Alice* step one analysis, the Court found that "the claims of the '755 Patent are plainly directed at a patent ineligible concept as (1) they attempt to capture a fundamental financial principle in violation of *Alice* and *Bilski*, and (2) they cover pure data manipulation as proscribed by *Content Extraction*." *Id.* at 5. The Court observed that "the '755 Patent is remarkably like the patent invalidated in *Content Extraction*" because its "attempt to claim bookkeeping relies on the recognized abstract concept of data collection and recognition."

*Id.* at 7 (citing *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343 (Fed. Cir. 2014)). The Court rejected Finnavations' argument that *DDR Holdings, LLC v. Hotels.com*, 773 F.3d 1245 (Fed. Cir. 2014), and *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016), support the patent eligibility of the claims. *Id.*

In its *Alice* step two analysis, the Court found that the '755 Patent only relies on "basic functions of a computer" that "fail to transform the claims into patent eligible subject matter." *Id.* at 8. In fact, the Court noted that "[t]he predominant software functionality claimed in the '755 Patent—recording financial data—is identical to the function found to be non-inventive by the Supreme Court in *Alice*." *Id.* at 9. Because "[t]he '755 Patent recites the same electronic recordkeeping and data collection functionality as the patent at issue in *Alice*," the Court determined that the '755 Patent failed to supply an inventive concept. *Id.*

## II. LEGAL STANDARD

Section 285 of the Patent Act allows a district court, in an exceptional case, to award reasonable attorneys' fees to the prevailing party. 35 U.S.C. § 285. "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). An exceptional case under § 285 is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.*

The facts here implicate all of the "nonexclusive" factors relevant to § 285 suggested by the Supreme Court in *Octane Fitness*, including "meritlessness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at n.6. Payoneer

need only demonstrate that this case is exceptional by a preponderance of the evidence, but the facts presented here exceed that standard. *Id.* at 557.

## III. ARGUMENT

### A. The Substantive Strength of Finnavations' Position was Exceptionally Weak.

#### 1. Finnavations ignored the plethora of Federal Circuit cases holding similar claims patent-ineligible.

The '755 Patent's claims are directed to the fundamental economic practice of bookkeeping and "the abstract idea of using a generic computer to search, analyze, and store information," which is the epitome of conventional computer activity. Order at 7. A cursory review of the law on § 101 should have revealed to Finnavations that the claims of the '755 Patent are directed to this abstract idea and do not contain any elements sufficient to make the claims patent eligible. First, the '755 Patent's claims are directed to the abstract idea of bookkeeping, which is a fundamental economic practice—courts have made clear this category of subject matter is not eligible for patenting:

- "The concept of hedging," which is "a fundamental economic practice long prevalent in our system of commerce," "is an unpatentable abstract idea." *Bilski v. Kappos*, 561 U.S. 593, 611 (2010);

- "[I]ntermediated settlement, *i.e.*, the use of a third party to mitigate settlement risk," "is an abstract idea beyond § 101's scope," *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2356 (2014);

- Method of "creating a contractual relationship . . . that is beyond question of ancient lineage," was ineligible for patenting, despite requiring generic computer functionality, *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014);

- Claims to "pricing a product for sale" were ineligible because they required nothing more than "the automation of the fundamental economic concept of offer-based price optimization through the use of generic-computer functions," *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015);

- Method of "processing an application for financing a purchase" is an abstract idea that is not transformed into something "significantly more" by the use and arrangement of conventional and generic computer components, *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1056 (Fed. Cir. 2017).

5

Second, the '755 Patent's claims are directed to the abstract idea of bookkeeping via the implementation of the abstract concept of data manipulation, a concept that the Federal Circuit has also made clear is abstract and ineligible for patenting:

- Claims for collecting data, recognizing certain data within the collected set, and storing that data were patent-ineligible, *Content Extraction and Transmission LLC v. Wells Fargo Bank, National Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014);

- Systems and methods for performing real-time monitoring of an electric power grid by collecting data from multiple data sources, analyzing the data, and displaying the results "do not go beyond requiring the collection, analysis, and display of available information in a particular field" and are thus patent-ineligible, *Elec. Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1351 (Fed. Cir. 2016);

- A method claiming the functional results of converting, routing, controlling, monitoring, and accumulating records "manipulates data but fails to do so in a non-abstract way" and is thus patent-ineligible, *Two-Way Media Ltd. v. Comcast Cable Comm'cns, LLC*, 874 F.3d 1329, 1337-39 (Fed. Cir. 2017);

- Claims "directed to . . . collecting, displaying, and manipulating data" that recite generic computer components that "merely describe the functions of the abstract idea itself" are patent-ineligible. *Intellectual Ventures I LLC v. Capital One Financial Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017);

- A device used for recording a digital image, transferring the digital image from the recording device to a storage device, and administering the digital image in the storage device "claims no more than the abstract idea of classifying and storing digital images in an organized manner" and is thus patent-ineligible, *In re TLI Comm'cns,* 823 F.3d 607, 609 (Fed. Cir. 2016);

- Claims that merely collect information, analyze it, and display certain results of the collection and analysis are directed to a patent-ineligible concept. *West View Research, LLC v. Audi AG*, 685 F. App'x 923, 926 (Fed. Cir. 2017).

Finnavations' patent thus falls into two separate but equally and clearly ineligible categories of subject matter: fundamental economic practices and data manipulation. Indeed, the Court recognized that "[t]he '755 Patent recites the same electronic recordkeeping and data collection functionality as the patent at issue in *Alice*." Order at 9. A reasonable litigant analyzing the '755

6

Patent's claims would have come to the same conclusion. Finnavations decided instead to pursue infringement of these claims.

It should have been clear to Finnavations from this body of law that the claims of the '755 Patent were "manifestly directed to an abstract idea" and thus patent-ineligible. *See Inventor Holdings v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1378 (Fed. Cir. 2017). Finnavations even admitted these claims were not directed to more than an abstract idea, so it knew they were ineligible. Mot. Hrg. At 28:18 ("The claim itself does not say how you deal with it."). Instead of dismissing its claims when presented with the case law in Payoneer's Motion, Finnavations persisted and attempted to analogize its claims to those in *DDR*, which "address[ed] a problem unique to computer technology," and *Enfish*, which "announce[d] an improvement in computer operation." Order at 8. But the Court saw through this argument and found that the "'755 Patent's attempt to claim bookkeeping relies on the recognized abstract concept of data collection and recognition." Opinion at 7. The law is clear that using generic computing technology to collect and manipulate data is not an inventive step that can confer patentability. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016) ("Merely requiring the selection and manipulation of information . . . by itself does not transform the otherwise-abstract processes of information collection and analysis."); *see also Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2359 (2014) ("use of a computer to create electronic records, track multiple transactions, and issue simultaneous instructions" is not an inventive concept); *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can. (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) (a computer "employed only for its most basic function . . . does not impose meaningful limits on the scope of those claims").

Accordingly, this case is exceptional under § 285 because, under any objectively reasonable assessment, Finnavations should have known that its claims were patent-ineligible in

7

view of the above cases and its claims' "stark contrast" to those in *DDR* and *Enfish*. *See My Health*, 2017 WL 6512221, at *4 (finding case exceptional in part due to the weakness of plaintiff's § 101 position in light of "[t]he numerous cases invalidating claims directed to information collection and analysis" and the asserted claims' "stark contrast" to the "handful of cases" like *Enfish*, which found a specific improvement to the way computers operate). Regardless whether one considers the thrust of the '755 Patent to be bookkeeping or data manipulation, both categories are manifestly abstract and ineligible for patenting.

        **2.    Courts have recognized the need to deter pursuit of similarly meritless claims.**

This frivolous case "stands out" from others because no reasonable litigant could expect success on the merits of Finnavations' § 101 position given the governing law. This Court should follow the example set by itself and others that an award of attorneys' fees is called for when a patentee advances meritless § 101 arguments such as these. *See, e.g., Inventor Holdings*, 876 F.3d at 1377–80; *SAP America, Inc. v. InvestPic, LLC*, No. 3:16-cv-02689, 2018 WL 993854 (N.D. Tex. Feb. 21, 2018); *My Health, Inc. v. ALR Techs., Inc.*, 2017 WL 6512221 (E.D. Tex. Dec. 19, 2017); *eDekka LLC v. 3Balls.com, Inc.*, 2015 WL 9225038 (E.D. Tex. Dec. 17, 2015).

For example, in *Inventor Holdings*, in affirming this Court's award of attorneys' fees, the Federal Circuit concluded that this Court "acted within the scope of its discretion in finding [the] case to be exceptional based on the weakness of [plaintiff's] § 101 arguments and the need to deter similarly weak arguments in the future." *Inventor Holdings*, 876 F.3d at 1377. After concluding that the claims at issue were "manifestly directed to an abstract idea," the Federal Circuit went on to state, "the only components disclosed in the specification for implementing the asserted method claims are unambiguously described as 'conventional.'" *Id*. at 1378. The Federal Circuit noted that "while we agree with [plaintiff] as a general matter that it was and is sometimes difficult to analyze

8

patent eligibility under the framework prescribed by the Supreme Court in *Mayo*, there is no uncertainty or difficulty in applying the principles set out in *Alice* to reach the conclusion that the [asserted] patent's claims are ineligible" because the "patent claims here are directed to a fundamental economic practice, which *Alice* made clear is, without more, outside the patent system." *Id*. at 1379.

Like the claims in *Inventor Holdings*, "there is no uncertainty or difficulty in applying the principles set out in *Alice*" and the long line of Federal Circuit precedents holding claims like Finnavations' patent-ineligible. *See id.* This Court had no difficulty in reaching that conclusion: "Just like the patent ineligible hedging of *Bilski* or the intermediated settlement of *Alice*, bookkeeping is a 'fundamental economic practice long prevalent in our system of commerce and taught in any introductory' accounting class." Order at 7 (quoting *Bilski*, 561 U.S. at 611). Indeed, the software functionality claimed in the '755 Patent "is identical to the function found to be non-inventive by the Supreme Court in *Alice*." Order at 9. Despite this, Finnavations persisted and forced Payoneer to incur fees to defend itself against claims that should never have been filed in the first place.

> **3.    An exceptional finding determination would advance considerations of compensation and deterrence**

The law permits the Court to consider deterrence as a factor in the § 285 analysis. *Octane Fitness*, 134 S. Ct. at 1756 n.6. Here, those considerations warrant a finding of exceptional case to prevent litigants like Finnavations from behaving the same way in the future. *See Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1930–31 (2015) ("[I]t is still necessary and proper to stress that district courts have the authority and responsibility to ensure frivolous cases are dissuaded"). Section 285 "serves as a deterrent to improper bringing of clearly unwarranted suits." *Automated Bus. Cos. v. NEC Am., Inc.*, 202 F.3d 1353, 1355 (Fed. Cir. 2000) ((quoting *Mathis v.*

*Spears*, 857 F.2d 749, 753–54 (Fed. Cir. 1988)). The law is intended as a "safeguard" against litigants like Finnavations that "use patents as a sword to go after defendants for money, even when their claims are frivolous." *Commil USA*, 135 S. Ct. at 1930.

The Supreme Court has commented on the benefit of fee-shifting statutes in litigation and the weight that should be afforded to the objective reasonableness of a party's litigating position. *See Kirtsaeng v. John Wiley & Sons*, 136 S. Ct. 1979 (2016). Although the Court addressed copyright law there, its discussion of the lack of merit in the plaintiff's case applies with equal force here:

> The objective-reasonableness approach . . . both encourages parties with strong legal positions to stand on their rights and deters those with weak ones from proceeding with litigation. When a litigant—whether plaintiff or defendant—is clearly correct, the likelihood that he will recover fees from the opposing (i.e., unreasonable) party gives him an incentive to litigate the case all the way to the end.

*Id.* at 1986. Here, Payoneer was clearly correct in arguing that the asserted claims were patent-ineligible, and Finnavations was clearly wrong. The Court can and should find that Payoneer should be awarded its attorneys' fees for standing on its rights. A finding of exceptional case here would signal to defendants that they can and should stand on their rights when faced with exceptionally meritless claims such as Finnavations'.

This case is similar to others where district courts have found cases exceptional due to a litigant's pursuit of objectively ineligible claims. *See, e.g.*, *Cellspin Soft, Inc. v. Fitbit, Inc.*, No. 4:17-CV-5928-YGR, 2018 WL 3328164, at *1 (N.D. Cal. July 6, 2018); *eDekka LLC v. 3Balls.com, Inc.*, No. 2:15-cv-541, 2015 WL 9225038 (E.D. Tex. Dec. 17, 2015). For example, in *eDekka*, the plaintiff eDekka asserted U.S. Patent No. 6,266,674, which "relates to storing and labeling information and discloses a preferred embodiment that includes a cassette tape recorder with multiple buttons, a microphone, and a speaker." *Id.* at *1. *eDekka* asserted the patent against

"online retailers that offer a shopping cart feature on their e-commerce websites." *Id.* The court explained the issues with the patent's facially-weak claims:

> The Court notes that the '674 Patent is demonstrably weak on its face, despite the initial presumptions created when this patent was issued by the PTO. The '674 Patent generically refers to a "data structure," but does not require such structure to be limited to a computer. The claims are not tied to a generic computer, let alone a specialized one. "Claim 1 essentially describes the common process of receiving, labeling, and storing information, while Claim 3 encompasses retrieving such information." The apparatus claims provide no additional features or meaningful limitations.

*Id.* at *2 (internal citations omitted). Judge Rodney Gilstrap concluded that the patent's "claims were clearly directed toward unpatentable subject matter, and no reasonable litigant could have reasonably expected success on the merits when defending against the numerous § 101 motions filed in this case." *Id.*

In finding the case exceptional, the *eDekka* court was particularly persuaded by the fact that the plaintiff "repeatedly offered insupportable arguments on behalf of an obviously weak patent." *Id.* at *4. Consequently, the court "question[ed] whether eDekka engaged in a reasonable and thorough pre-suit investigation regarding the § 101 standard and relevant authority before filing" its lawsuits. *Id.* The court therefore "identifie[d] a clear need to advance considerations of deterrence." *Id.*

Like in *eDekka*, Finnavations' asserted claims were obviously weak claims, asserted in the face of "substantial precedent dismissing analogous data manipulation claims." *Cellspin*, 2018 WL 3328164, at *3. Despite this precedent, Finnavations offered insupportable arguments on behalf of the claims. It failed, both in its briefing and in its argument during the hearing on the motions to dismiss, to identify any proper basis to support the eligibility of its claims. Accordingly, the Court is in a position to see that Finnavations did not "engage[] in a reasonable and thorough . . . investigation regarding the § 101 standard and relevant authority" before pursuing its lawsuits. *See*

11

*eDekka*, 2015 WL 9225038 at *4. Therefore, like in *eDekka*, the Court can "identif[y] a clear need to advance considerations of deterrence" and find the case exceptional. *Id.*

### B. Payoneer is Entitled to its Attorneys' Fees for Defending a Meritless Case.

The '775 Patent is patent-ineligible on its face. Finnavations should never have filed this lawsuit because it should have recognized the § 101 issues with its claims considering both the governing law and the facts in this case. Under any objectively reasonable assessment of Supreme Court and Federal Circuit precedent, Finnavations' patent is manifestly directed to an abstract idea and ineligible under § 101. Yet Finnavations pursued its case anyway, wasting the Court's and the parties' time and resources.

Finnavations' filing of this case and pursuit of litigation in the face of clear evidence that it could not prevail forced Payoneer to unnecessarily incur attorneys' fees and the Court to unnecessarily devote its limited judicial resources. The Court should therefore award Payoneer its attorneys' fees "to deter future 'wasteful litigation' on similarly weak arguments." *See Inventor Holdings*, 876 F.3d at 1377–78. It is unnecessary to wait to administer justice because the Court retains jurisdiction over a fee determination, even during appeal. *See Venen v. Sweet*, 758 F.2d 117, 121 (3d Cir. 1985) ("A district court, during the pendency of an appeal is not divested of jurisdiction to determine an application for attorney's fees."). Therefore, this determination should be made now, while the issues are still fresh in the Court's mind and in order to have a just, speedy, and final determination of the entire case.

### IV. CONCLUSION

For the foregoing reasons, Payoneer respectfully requests that the Court grant its Motion, find this case exceptional, and award Payoneer its attorneys' fees of $99,727.00. See Anderson Decl., Ex. 1.

Dated: December 10, 2018 Respectfully submitted,

**FISH & RICHARDSON P.C.**

By: */s/ Jeremy D. Anderson*
Jeremy D. Anderson (DE # 4515)
222 Delaware Avenue, 17th Floor
Wilmington, Delaware 19801
(302) 652-5070 (Telephone)
(302) 652-0607 (Facsimile)
janderson@fr.com

Neil J. McNabnay
David B. Conrad
Ricardo J. Bonilla
Michael A. Vincent
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
mcnabnay@fr.com
conrad@fr.com
rbonilla@fr.com
vincent@fr.com

**COUNSEL FOR DEFENDANT PAYONEER INC.**