# Exhibit A

```
 1                  IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF DELAWARE

 3

 4    FINNAVATIONS LLC,                )
                                       )
 5                    Plaintiff,       )
                                       ) C.A. No. 18-444-RGA
 6    v.                               )
                                       )
 7    PAYONEER, INC.,                  )
                                       )
 8                    Defendant.       )
      - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
 9    FINNAVATIONS LLC,                )
                                       )
10                    Plaintiff,       )
                                       ) C.A. No. 18-445-RGA
11    v.                               )
                                       )
12    STITCH LABS, INC.,               )
                                       )
13                    Defendant.       )

14
                                       J. Caleb Boggs Courthouse
15                                     844 North King Street
                                       Wilmington, Delaware
16
                                       Wednesday, October 24, 2018
17                                     11:04 a.m.
                                       Oral Argument
18

19    BEFORE:  THE HONORABLE RICHARD G. ANDREWS, U.S.D.C.J.

20    APPEARANCES:

21              STAMATIOS STAMOULIS, ESQUIRE
                STAMOULIS & WEINBLATT LLC
22
                          -and-
23
                JAY JOHNSON, ESQUIRE
24              KIZZIA JOHNSON, PLLC

25                                     For the Plaintiff
```

1    APPEARANCES CONTINUED:

2

3                    JEREMY D. ANDERSON, ESQUIRE
                     MICHAEL VINCENT, ESQUIRE
                     RICARDO BONILLA, ESQUIRE
4                    FISH & RICHARDSON, P.C.

5                                    For the Defendant
                                     Payoneer, Inc.

6

7                    JENNIFER YING, ESQUIRE
                     MORRIS NICHOLS ARSHT & TUNNELL LLP

8                            -and-

9
                     BRIAN B. MICHALEK, ESQUIRE
10                   OLSEN & CEPURITIS, LTD

11                                   For the Defendant
                                     Stitch Labs, Inc.

12

13                           PROCEEDINGS

14

11:04:06 15            THE CLERK:  All rise.

11:04:07 16            THE COURT:  All right.  Good morning.  Please be

11:04:09 17    seated.

11:04:15 18            This is the argument on the Section 101 motion

11:04:20 19    for Finnavations versus Payoneer, Number 18-444, and

11:04:26 20    Finnavations versus Stitch Labs, Number 18-445.

11:04:34 21            Mr. Stamoulis, good morning.

11:04:35 22            MR. STAMOULIS:  Yes.  Good morning, Your Honor,

11:04:42 23    Stam Stamoulis on behalf of Finnavations.  And with me is my

11:04:45 24    co-counsel, Jay Johnson.

11:04:47 25            THE COURT:  All right.  Good morning, Mr. Johnson.

11:04:51 1          MR. JOHNSON:  Good morning, Your Honor.

11:04:52 2          THE COURT:  And Ms. Ying.

11:04:55 3          MS. YING:  Good morning, Your Honor.  Jennifer

11:05:02 4    Ying from Morris Nichols Arsht & Tunnell on behalf of

11:05:06 5    defendant, Stitch Labs.  With me at counsel table is Brian

11:05:10 6    Michalek from Olsen & Cepuritis in Chicago, Illinois.

11:05:16 7          And counsel on the defendants' side will be

11:05:19 8    splitting their time with argument, and I'll let

11:05:21 9    Mr. Anderson introduce his co-counsel.

11:05:24 10         THE COURT:  All right.  Thank you.

11:05:25 11         Mr. Anderson.

11:05:27 12         MR. ANDERSON:  Good morning, Your Honor.  Jeremy

11:05:29 13   Anderson from Fish & Richardson on behalf of the defendant,

11:05:32 14   Payoneer, Incorporated.  And with me at counsel table is my

11:05:36 15   colleagues from our Dallas office, Ricky Bonilla and Michael

11:05:40 16   Vincent.

11:05:41 17         THE COURT:  All right.  Good morning.

11:05:42 18         MR. ANDERSON:  Both of them have been admitted

11:05:45 19   pro hac vice, and Mr. Vincent will be making the argument on

11:05:48 20   behalf of Payoneer.

11:05:50 21         THE COURT:  Good morning to you all.  Thank you,

11:05:53 22   Mr. Anderson.

11:05:54 23         So how were the defendants thinking of splitting

11:05:56 24   up their time here?

11:06:00 25         MR. MICHALEK:  Brian Michalek for Stitch.  We've

11:06:02  1    conferred with co-counsel here.  And Mr. Vincent is going to
11:06:05  2    be starting off for approximately 15 minutes discussing the
11:06:08  3    issues that he raised in his brief, and then I will take the
11:06:12  4    remaining 15 minutes to discuss the issues.
11:06:14  5                    THE COURT:  When you say "remaining," did I say
11:06:16  6    each side got a half an hour?
11:06:18  7                    MR. VINCENT:  That's kind of what we were
11:06:20  8    thinking.
11:06:20  9                    THE COURT:  All right.  Well, we'll see how that
11:06:23 10    goes.  That seems perhaps to be more than we need, but maybe
11:06:25 11    I didn't say anything in particular.
11:06:27 12                    So Mr. Vincent.
11:06:33 13                    MR. VINCENT:  Yes, Your Honor.  Good morning,
11:06:52 14    Your Honor.
11:06:52 15                    THE COURT:  Good morning.
11:06:53 16                    MR. VINCENT:  Michael Vincent for the movant,
11:06:56 17    Payoneer.  So the asserted patent is really quite simple
11:06:59 18    once all the technical jargon is stripped away.  At its core
11:07:04 19    it relates to a financial assistant.
11:07:06 20                    Figure 1 of the asserted patent here outlines it
11:07:09 21    pretty well.  An assistant is invoked to get some data.  It
11:07:13 22    copies the data, relays the data.  It sends the data on
11:07:17 23    elsewhere, combines the data.  The refrain here is data.
11:07:21 24    That's all it does.  It just takes data, does something with
11:07:24 25    it, and passes it along.

11:07:26 1          It's an abstract idea at its core.  I'm pretty

11:07:30 2    sure I actually practiced this abstract idea just last week

11:07:33 3    in preparation for coming here.  So I'm from Dallas.  I had

11:07:36 4    to get to Delaware.

11:07:37 5          I asked my assistant, Wendi, to book a flight to

11:07:39 6    Delaware.  So I invoke the financial assistant.  I invoke

11:07:43 7    Wendi.  I asked her to book the flight.

11:07:45 8          She received this request, step two.  And step

11:07:49 9    three, my financial assistant copies and relays the

11:07:52 10   transaction data.  So Wendi copied down my travel details,

11:07:54 11   and then later relayed them to American Airlines.

11:07:57 12         Fourth step, Wendi receives additional data.  So

11:08:00 13   I told her, "This flight that you just booked for me, it's

11:08:03 14   for the Payoneer case."  So now Wendi has two data sets,

11:08:06 15   flight details and then the additional information that I

11:08:09 16   gave her.

11:08:09 17         And then the final step is the financial

11:08:12 18   assistant transmits data to her personal financial

11:08:16 19   management system.  So then it takes the two data sets and

11:08:18 20   puts them in a different format into the financial

11:08:22 21   management program.  So they're the basic steps that Wendi

11:08:25 22   performed by implementing that.

11:08:27 23         The technical language that the patent has is

11:08:31 24   really just more of a field of use limitation.  It doesn't

11:08:35 25   really add anything.  It refers to this idea, more than

1   anything, of an abstract.

2          So going through the Alice steps really quickly,

3   I should confirm this.  So step one, we look for an abstract

4   idea, whether the claims are directed to it.  And they

5   clearly are because using the financial assistant for

6   recordkeeping, it's a practice long performed by humans for

7   thousands of years.  Humans have kept records, and asked

8   other humans to help them do so.  So that's the core of the

9   patent here.

10          And this fundamental economic practice is all

11   that the claims are directed to.

12          THE COURT:  And so your abstract idea is

13   "financial assistant"?

14          MR. VINCENT:  Yes, Your Honor.

15          THE COURT:  All right.

16          MR. VINCENT:  So Claim 9, which plaintiffs have

17   identified in their Complaint, is directed to this financial

18   assistant.  It copies data.  It adds some more data.  Then

19   it records the results.

20          The Court can be confident that this is no more

21   than an abstract idea because the way that Claim 9 of the

22   '755 patent phrased the claims, it's by claiming outcome.

23   It's not by solutions to achieve those outcomes.  It's by

24   claiming the end, but not the means using purely functional

25   language.  And that's really a hallmark of an abstract idea.

11:09:53 1          So as I just mentioned, field of use limitations

11:09:56 2 are unavailing.  So the Supreme Court and the Federal

11:10:00 3 Circuit have repeatedly told us that limiting an abstract

11:10:03 4 idea to a specific field of use does not render that idea

11:10:07 5 any less abstract.

11:10:09 6          THE COURT:  What do you think the field of use

11:10:10 7 is here?

11:10:12 8          MR. VINCENT:  Field of use is on a generic

11:10:15 9 computer with regard to an online financial transaction.  So

11:10:19 10 it's using that financial assistant in a narrow way, but it

11:10:23 11 doesn't make it any less abstract just because it can only

11:10:26 12 be used in the specific field.

11:10:28 13          So Claim 9 has some language in it that

11:10:34 14 indicates that this is just artificially limiting it to a

11:10:38 15 field of use.  So, for example, the first line includes a

11:10:42 16 financial management program.  That's not actually

11:10:45 17 controlling anything in the claim.  It doesn't form how the

11:10:49 18 method is practiced.

11:10:50 19          The financial management program is just an

11:10:53 20 unspecified destination for the data.  So the method

11:10:58 21 manipulates data.  It receives data.  It manipulates the

11:11:01 22 records, and then at the end, it sends it to a financial

11:11:04 23 management program.  It's just where the data goes, but not

11:11:08 24 what it's done to the data.

11:11:10 25          The network device communicates with the

11:11:13  1    commercial web server.  This is just general, again,

11:11:16  2    technology operating in its conventional manner.  And then

11:11:19  3    the claim, Claim 9, limits data structures on unspecified

11:11:23  4    compatibilities.

11:11:24  5            That is a first data structure and a second data

11:11:27  6    structure.  They're supposed to be compatible with an online

11:11:31  7    financial transaction or the financial management program,

11:11:34  8    but that doesn't tell us how it's compatible or how to make

11:11:37  9    it compatible.  It doesn't tell us what that means.  It

11:11:39 10    doesn't tell us what data structures are.  It's essentially

11:11:45 11    non-limiting in any meaningful way.

11:11:48 12            So looking at Claim 9 a little more in-depth

11:11:53 13    here, I've highlighted for the Court the field of use

11:11:58 14    limitations that Claim 9 has.  And these are all the

11:12:02 15    technical buzz words that Claim 9 dresses itself up in.  So,

11:12:09 16    for example, financial management program, again, that's

11:12:11 17    just a destination.  That's where the data goes.  It doesn't

11:12:14 18    actually do anything within the network.  And that network

11:12:18 19    divides the online financial transactions with a commercial

11:12:19 20    web server.  That's just generic technology operating in its

11:12:22 21    normal course.

11:12:23 22            These are just limitations that don't really

11:12:25 23    form how the method is performed.  So if we set those aside,

11:12:34 24    it reveals what Claim 9 is truly directed to.  And it's just

11:12:38 25    a method of delivering data.

11:12:41  1        So this method comprises using a financial

11:12:43  2    assistant to search a set of data.  So I ask Wendi, Please

11:12:47  3    book my flight, and she looks at my request to find the

11:12:50  4    flight number, the credit card, the transaction data within

11:12:53  5    that request.

11:12:54  6        If Wendi determines that the relevant data is

11:12:56  7    within that set, then she copies it, she stores it somewhere

11:13:01  8    else, she adds it with the additional data I gave her, and

11:13:04  9    it's for the Payoneer case.  And then she sends it on.

11:13:08 10    That's really all there is to it.

11:13:10 11        The abstract nature of the claims here is

11:13:19 12    confirmed by Federal Circuit precedent.  Most strikingly,

11:13:20 13    the Content Extraction case is pretty on the nose here.

11:13:24 14    Content Extraction involved an accused device that was an

11:13:28 15    ATM that received checks that were deposited.  It scanned

11:13:33 16    the checks.  It extracted the relevant data such as the

11:13:37 17    account number, the amounts, and then it stored that data in

11:13:40 18    the brain.

11:13:41 19        So it collected the data.  It recognized it, and

11:13:44 20    it stored data.  And the Federal Circuit said, That's just

11:13:46 21    an abstract idea.  It's using conventional technology,

11:13:49 22    scanners, a generic computer to do that, but it doesn't

11:13:54 23    improve upon that abstract idea or limit it in any specific

11:13:57 24    way.

11:13:57 25        Similarly, the Claim 9 here, identified Claim 9

11:14:02  1    of the asserted patent, it collects data when it searches by

11:14:06  2    the financial assistant.  It recognizes data when it

11:14:08  3    determines by the financial assistant whether it has the

11:14:11  4    data it's looking for, and then it stores the data when it

11:14:13  5    copies and stores the data.  So all of this is completely in

11:14:19  6    line with what the Federal Circuit has said is an abstract

11:14:22  7    idea.

11:14:25  8         The Affinity Labs case reiterates that a

11:14:30  9    hallmark of abstract ideas is the "purely functional nature

11:14:33 10    of the claim language."  So "the purely functional nature of

11:14:38 11    the claim confirms that it's directed to an abstract idea,

11:14:41 12    not to a concrete embodiment of that idea."  So this

11:14:44 13    distinction is the idea of the abstract or actually how to

11:14:47 14    implement it in a particular way.

11:14:49 15         The claim at issue -- and Affinity Labs had,

11:14:52 16    again, some of this technical jargon that really didn't tell

11:14:56 17    you anything.  So, for example, the media managing system

11:15:00 18    manages the media in that it maintains a library of content.

11:15:05 19         A collection of instructions was an element of

11:15:07 20    the claim, and they were defined as being operable when

11:15:11 21    executed.  But all that it means to execute a collection of

11:15:14 22    instructions is to make them operate.  It's circular.  It's

11:15:17 23    topological.  There's no substance there that actually tells

11:15:20 24    you how to operate this particular method of practicing the

11:15:23 25    claim.

11:15:24   1        And, finally, the claims in Affinity Labs spoke

11:15:28   2    of a network-based delivery resource that retrieves and

11:15:32   3    streams the requested content.  It doesn't tell you how it

11:15:34   4    does that.  It just claims the conclusion that it does it.

11:15:37   5    It leaves it to the reader to figure out how to actually do

11:15:40   6    that.

11:15:41   7        Similarly, on the bottom right here, Claim 9 of

11:15:45   8    the asserted patent, it's a financial assistant that

11:15:48   9    performs similar functions.  It searches.  It determines.

11:15:51  10    It copies.  It stores.  But it doesn't tell you how it does

11:15:56  11    any of those.

11:15:56  12        These are functions that a generic computer

11:16:00  13    typically does.  That's the definition of a computer, that

11:16:03  14    it computes.  It takes data.  It does something with the

11:16:05  15    data.  It produces a result.  It searches the data.  It

11:16:09  16    determines the data, whether the data has additional data.

11:16:12  17    It copies the data.  It stores the data.

11:16:14  18        I apologize for being repetitive, but that's

11:16:17  19    just the nature of the claims here.  It's just manipulating

11:16:19  20    data.

11:16:20  21        So all this is to say that the asserted '755

11:16:26  22    patent uses a computer merely as a tool.  It uses computers

11:16:32  23    in the way that computers were meant to be used, but it

11:16:34  24    doesn't do anything additional.  It doesn't improve

11:16:39  25    abilities of computers to operate.  There's absolutely

11:16:43 1    nothing that computers can do now because of this patent

11:16:46 2    that they couldn't do before.  There's no improvement here.

11:16:48 3           So the patent prosecution history confirms that

11:16:52 4    this is what the inventor intended.  So up on the slide

11:16:57 5    here, Slide 9, in the prosecution history when the inventor

11:17:02 6    was attempting to secure these patents, he had identified

11:17:06 7    the problem in the prior art was that some of the data had

11:17:09 8    to be manually entered to practice prior methods.  The data

11:17:14 9    must be manually entered into a particular format.

11:17:16 10          The focus was on humans having to participate in

11:17:21 11   this process and having to be slower.  And then their idea

11:17:24 12   was, Hey, let's speed it up.  Let's have it operate at the

11:17:27 13   speed of a generic computer, which may be helpful, but it's

11:17:30 14   not inventive at all.

11:17:32 15          So the asserted '755 patent relies on generic

11:17:43 16   computers, generic computer components that operate

11:17:48 17   conventionally.  The specification speaks of a terminal

11:17:50 18   device which would be a PDA, a pager, a cell phone, or other

11:17:53 19   communication device.  So it's any device that communicates.

11:17:56 20   It's very broad.  It doesn't give you a lot of direction.

11:18:00 21          A commercial web server that operates a

11:18:04 22   commercial website.  In fact, that's how it's defined.  It's

11:18:06 23   generic.  There's nothing else really there.

11:18:07 24          And the personal financial management program

11:18:10 25   could be Quicken, could be Microsoft Money.  It really

11:18:13 1    doesn't matter what it is.  It's just a destination for the

11:18:15 2    data.  It has no concern about how this operates because

11:18:19 3    that's just where the data goes, but it plays a meaningful

11:18:22 4    role in how the method is practiced.

11:18:25 5              Then, finally, what should be very striking here

11:18:31 6    is that the financial assistant, which is the core of this

11:18:36 7    patent here, it's the brains of the operation, there's no

11:18:40 8    direction in the patent for how it actually operates.  The

11:18:44 9    patent says, "The financial assistant may be implemented in

11:18:47 10   any type of executable code, including C++, Java and VB

11:18:52 11   Script."  That's basically saying just use software.  Just

11:18:57 12   wave a magic wand, make it work, how these results happen,

11:19:01 13   but I'm not going to tell you how to do it.  You can go

11:19:05 14   figure that out.

11:19:06 15             The result is that the claims claim any way of

11:19:08 16   doing it.  It's incredibly broad.  It's abstract.  And for

11:19:12 17   that reason, it should be invalidated.

11:19:18 18             THE COURT:  Okay.  Thank you.

11:19:19 19             MR. VINCENT:  Thank you, Your Honor.

11:19:39 20             MR. MICHALEK:  Good morning, Judge.

11:19:40 21             THE COURT:  Good morning.

11:19:41 22             MR. MICHALEK:  You know, I, too, have some

11:19:43 23   slides for you.  If I may approach?

11:19:46 24             THE COURT:  Sure.

11:19:53 25             MR. MICHALEK:  Thank you.  Judge, the problem

11:20:03  1     here is that we have a patent that's directed to the

11:20:05  2     abstract patent ineligible subject matter of data

11:20:08  3     manipulation.  And in particular, we're dealing with the

11:20:12  4     manipulation of financial and economic data that occurs

11:20:15  5     after a financial transaction takes place.

11:20:18  6             And really I think this is a textbook claim of a

11:20:21  7     patent ineligible type of patent in that we're dealing with

11:20:26  8     pure changing of data.  We're doing stuff to data.  And in

11:20:29  9     particular, we're doing stuff to financial data which is

11:20:32 10     really a category of data from Alice and its progeny that

11:20:35 11     we've learned is not strongly protected.

11:20:37 12             I think we handled -- and we address these

11:20:41 13     issues fairly concretely in our briefing, so I don't want to

11:20:43 14     regurgitate that.  I want to be careful not to, you know,

11:20:47 15     cover what Payoneer's counsel has already covered, but I

11:20:51 16     really want to make three key points here today that I think

11:20:53 17     will be dispositive in granting Stitch's motion to dismiss.

11:20:57 18             THE COURT:  Well, and you can get to your key

11:21:00 19     points in a minute, maybe this is one of them, but you have

11:21:04 20     a different idea of how to say what the abstract idea is;

11:21:07 21     right?

11:21:08 22             MR. MICHALEK:  Well, I think they're

11:21:09 23     complimentary because my abstract idea is data manipulation.

11:21:13 24     And that when we take a look at actual Claim 9, what we're

11:21:16 25     doing is we're searching data.  We are determining something

11:21:19 1    about the data, and then we're copying and storing the data.

11:21:22 2    We're just manipulating it.

11:21:24 3            Now, as Payoneer's counsel identified, and I do

11:21:26 4    want to hit on this, the financial assistant is just a

11:21:29 5    general-purpose computer that is also abstract.  And I think

11:21:32 6    that was Payoneer's idea of the abstract concept which is

11:21:35 7    subsumed within this claim.

11:21:37 8            THE COURT:  So you want to say data

11:21:41 9    manipulation.  He said financial assistant.

11:21:44 10           What would you say to the abstract idea of

11:21:47 11   bookkeeping?

11:21:49 12           MR. MICHALEK:  Well, bookkeeping, if that was

11:21:53 13   the issue, we would need to look on the actual claim on how

11:21:55 14   the bookkeeping was being done.  And the bookkeeping, if all

11:21:57 15   that was happening there was some type of manipulation of

11:22:00 16   the data associated with bookkeeping or, you know, what was

11:22:03 17   actually being done with respect to the actual claim

11:22:07 18   language, then I think we're going to come out in the end

11:22:10 19   and find that that, too, is directed to an abstract,

11:22:13 20   ineligible subject matter.

11:22:14 21           THE COURT:  Right.  And I'm not saying that it

11:22:16 22   isn't, but when I look at this, that's kind of what it

11:22:20 23   struck me as is this is bookkeeping done on a computer.  You

11:22:28 24   know, isn't that what businesses have done for a long time

11:22:35 25   is they engage in financial transactions.  They collect

11:22:39  1   paper on it.  They write it down in a book.  They add some

11:22:42  2   codes for, you know, tax deductible depreciation, who knows

11:22:49  3   what else.  And this is basically saying to do it on a

11:22:49  4   computer?

11:22:56  5            MR. MICHALEK:  Yeah.  I think Your Honor is

11:22:57  6   absolutely correct.  This is basically, when you strip away

11:23:00  7   everything and you get down to what the claim actually says,

11:23:02  8   all we're doing is bookkeeping.  And we're applying a

11:23:05  9   general-purpose computer to it.

11:23:06 10            And the Federal Circuit case law, there's a

11:23:10 11   robust growing body of Federal Circuit jurisprudence that

11:23:13 12   tells you that these type of patents where all you are

11:23:16 13   doing, I'm calling it data manipulation, but as the Court

11:23:19 14   said, it's just bookkeeping, and specific with this Claim 9,

11:23:22 15   these are going to be abstract, and they're not going to be

11:23:24 16   patent ineligible.

11:23:25 17            And if you turn to Page 2, now we don't have the

11:23:27 18   slide up here, but if you turn to Page 2 of our slide in the

11:23:30 19   hard-copy version, you'll see that we've identified this

11:23:34 20   body of Federal Circuit jurisprudence where it's

11:23:36 21   consistently held admonished claims just like this that are

11:23:41 22   at issue here, Claim 9 for being directed to abstract

11:23:44 23   subject matter and being invalid.

11:23:47 24            And we talked about these in our brief, and I

11:23:49 25   don't want to belabor them too much here.  But maybe it

11:23:52  1     makes sense to go through one or two that really illustrate

11:23:55  2     the point that I think Your Honor is making, that this is

11:23:57  3     just an abstract idea hooked up to a computer.

11:23:59  4          So if we turn to Slide Number 3, we get to the

11:24:03  5     SAP America versus Investpic case.  Now, this is a recent

11:24:07  6     Federal Circuit decision, May 2018.  It was on a motion to

11:24:10  7     dismiss, similar to the procedural posture here.

11:24:13  8          And if you look at the left side that's Claim 9

11:24:16  9     which Payoneer counsel identified, and it really just boils

11:24:19 10     down to searching a set of transmitted data.  In this case

11:24:23 11     the transmitted data is some type of financial data that is

11:24:26 12     associated with whatever transaction occurred.

11:24:28 13          Then we get to the next step, and all we're

11:24:31 14     doing is determining something about the data.  And then we

11:24:33 15     are just copying and storing the data in a data structure.

11:24:37 16     And this was really a very similar problem in SAP America

11:24:41 17     what we're doing.

11:24:41 18          THE COURT:  So the SAP America, that was

11:24:47 19     modified by the Federal Circuit more recently; right?

11:24:50 20          MR. MICHALEK:  It was.  It was modified in

11:24:52 21     August, although it did not have the modification, as I

11:24:54 22     understand it.  It did not have any value or input on the

11:24:59 23     ruling here that found these to be patent ineligible.

11:25:02 24          THE COURT:  Well, I remember it was a modest

11:25:04 25     modification, but I couldn't remember exactly what it was.

11:25:07  1        MR. MICHALEK:  Yes.  But just to illustrate this

11:25:10  2   point again, we're doing the same type of data manipulation

11:25:13  3   in SAP America that, you know, the Federal Circuit said was

11:25:17  4   invalid.  This time we're storing investment data.  We're

11:25:21  5   receiving a statistical analysis, receiving a bias

11:25:24  6   parameter, and then ultimately we're performing some type of

11:25:28  7   statistical analysis.  And really this is just pure data

11:25:32  8   manipulation like the claim in Claim 9 here.

11:25:34  9        And you'll see that we have other --

11:25:36 10        THE COURT:  So one of the things that I was

11:25:39 11   wondering about is because, you know, you've said data

11:25:45 12   manipulation in a way, and the other defense counsel said

11:25:48 13   it, you know, and there seems to be maybe sort of certain

11:25:56 14   categories of things in the Federal Circuit's handling of

11:26:03 15   these 101 motions.

11:26:06 16        And so one of the things I'm wondering is:  Does

11:26:09 17   it make a difference whether you say data manipulation or

11:26:15 18   fundamental economic practice in terms of what categories of

11:26:23 19   cases are relevant to the decision or the analysis?

11:26:29 20        MR. MICHALEK:  I don't think it does.  I think

11:26:31 21   the inquiry from a step one perspective from Federal Circuit

11:26:35 22   case law that's on page or Slide 2 here is that if you have

11:26:39 23   data, it doesn't really matter what type of data it is.  It

11:26:42 24   could be related to financial data, or an economic practice

11:26:45 25   data, or you know, in the next case I have is Electric Power

11:26:49  1    Group.  That data was complex data relating to how a power

11:26:53  2    grid ran out in the open.

11:26:54  3           It doesn't really matter what type of data is

11:26:56  4    being manipulated.  The fact of the matter is, and this is

11:26:59  5    from the Federal Circuit jurisprudence, if you're doing

11:27:02  6    something to it, meaning if you're just searching it, or if

11:27:05  7    you're making an analysis about it, or if you're storing it,

11:27:08  8    or if you're doing anything like that, you're going to fall

11:27:11  9    into the category of abstract patent ineligible subject

11:27:15 10    matter.  And I think the Federal Circuit has been very

11:27:19 11    unwavering on this and resolute in its admonishment in these

11:27:21 12    types of claims of being abstract.

11:27:24 13           So that actually was really my first point, the

11:27:26 14    alignment between the claim that we're dealing with here and

11:27:29 15    this whole body of Federal Circuit case law, the data

11:27:32 16    manipulation.  And I'm not going to go through these, but

11:27:37 17    we'll also detail these in some additional slides here in

11:27:40 18    the packet.  But that really was the first point.

11:27:43 19           Second point is, and I think we touched a little

11:27:45 20    bit about this, but I want to expand is that there's no how

11:27:48 21    for this patent, meaning it's result based.  And if you look

11:27:52 22    at the claim, what we actually have is we have a list of

11:27:55 23    claimed elements, and then we have a functional result.  We

11:27:58 24    have a financial assistant that is either storing data, or

11:28:01 25    it's transmitting data, or it's doing something from a

11:28:04  1    functional perspective.

11:28:06  2            I think really this is where the problem is.

11:28:07  3    This is where the land grab is.  It's probably from a step

11:28:10  4    two analysis with respect to Alice.

11:28:12  5            We have a problem that is supposedly pretty hard

11:28:14  6    to solve.  And without any instructions or specifics on how

11:28:17  7    to solve it, we just jump to a conclusion that it's storing

11:28:21  8    this particular data somehow.  But the problem is that the

11:28:23  9    specification, especially when we're talking about the

11:28:26 10    financial assistant, doesn't provide us any specialized

11:28:29 11    instructions.  The claims do not provide us any specialized

11:28:32 12    instructions.

11:28:32 13            And I think that we don't even have to go past

11:28:39 14    Finnavations' own briefing when we're talking about the

11:28:42 15    financial assistant.  They generically refer to it as a

11:28:45 16    software module.  So we have no specialized instruction.  We

11:28:48 17    have recitation of just a generic software module, in our

11:28:48 18    view.

11:28:51 19            And then we actually turn to the specification.

11:28:53 20    I think the specification provides a little bit of evidence

11:28:55 21    that can help us here.  And specifically, if we jump to

11:28:59 22    Slide 12 in the paper packet here, we actually see, and I

11:29:03 23    think Payoneer's counsel touched on this, but we see when we

11:29:06 24    go to the patent itself, Column 3, Lines 27 to 29, we have a

11:29:12 25    financial assistant may be implemented in any type of

11:29:13 1    executable code, including C++, Java and VB Script.  This is

11:29:18 2    the only thing that we get from the specification about the

11:29:18 3    financial assistant.

11:29:22 4         And really this language, this basic coding

11:29:26 5    language is the hallmark of a general-purpose computer, one

11:29:29 6    that uses fundamental coding language.  And there's no

11:29:32 7    specialized instructions about how to code it to make this

11:29:35 8    not a general-purpose computer.  And because of that, as

11:29:38 9    Payoneer counsel identified, we have a financial assistant

11:29:40 10   which is the abstract because it's just doing this

11:29:45 11   result-based function from a very result-focused,

11:29:50 12   result-centered, and there's no specialized instructions on

11:29:52 13   how to do it.  And that's a problem and one of the reasons

11:29:55 14   why these claims fail to meet the patent ineligibility

11:29:58 15   standard.

11:29:58 16        And Judge, if I may, that's point two.  The

11:30:04 17   third point that I want to make here is if we turn to Slide

11:30:09 18   14, is that there are no factual -- paper Slide 14 -- there

11:30:15 19   are no factual issues here to decide at this

11:30:19 20   motion-to-dismiss stage.  First of all, Finnavations does

11:30:21 21   not identify any factual issues.

11:30:25 22        The second piece of this is that we have this

11:30:28 23   Berkheimer case, and what Berkheimer tells us is there's a

11:30:31 24   couple types of situations.  We have a situation where there

11:30:33 25   may be factual issues.  That's step two.  And then we have a

11:30:37  1    situation where there may not be factual issues at step two.

11:30:40  2              In fact, Berkheimer illustrates those

11:30:43  3    situations.  In Berkheimer, we have Claims 1 through 3 and

11:30:46  4    9.  The Federal Circuit affirmed them as patent ineligible

11:30:49  5    at the motion to dismiss stage, said there were no factual

11:30:52  6    issues.

11:30:52  7              And then with respect to dependent Claims 4

11:30:54  8    through 7, they were remanded because there were factual

11:30:57  9    issues.  And these claims were very technologically complex,

11:31:00  10   and they actually had some issues that needed to be resolved

11:31:02  11   by the District Court.

11:31:03  12             Now, the Federal Circuit also in the Berkheimer

11:31:06  13   denial petition en banc, the Federal Circuit provided us

11:31:09  14   added guidance in that they said that in the situation like

11:31:12  15   we have here where the specification actually provides

11:31:16  16   evidence that the claimed elements, the additional claimed

11:31:20  17   elements were well-known, routine, or conventional in the

11:31:23  18   art, then we are going to have a situation, and I'll quote,

11:31:25  19   "that is difficult, if not impossible, for the patentee to

11:31:30  20   show a genuine distinction of facts."  And I think that's

11:31:36  21   the guidance and that's the category that we fall in here.

11:31:38  22             And if you look to Slide 14, what we've done on

11:31:42  23   the left column is we have a listing of the claimed

11:31:45  24   elements.  And then we have the evidence that's actually

11:31:48  25   from either the prosecution history or the specification

11:31:51  1    that shows that each of these claimed elements is

11:31:54  2    well-known, routine, and conventional in the art.  And you

11:31:57  3    know, Your Honor, if you follow along, I'll just go through

11:32:00  4    a couple of them.

11:32:00  5         If we look to the second row, we talk about

11:32:03  6    using a network device to conduct an online financial

11:32:07  7    transaction with a commercial server.  If we look to the

11:32:09  8    specification, it tells us that a commercial server is

11:32:11  9    just somebody else's product.  It's NetGrocer or it's

11:32:14  10   Amazon.

11:32:15  11        If we look to what a network device is, and this

11:32:18  12   is row four, the specification tells us that it's just a

11:32:22  13   computer terminal, a PDA, a pager, a cell phone, well-known,

11:32:26  14   conventional components at the time.

11:32:29  15        Going a little bit further, one more example, we

11:32:32  16   have a financial management system that's claimed in the

11:32:36  17   fifth row down.  The specification tells us the personal

11:32:40  18   financial management system could be Quicken or Microsoft

11:32:42  19   Money.

11:32:42  20        Again, we're dealing with conventional,

11:32:44  21   well-known, and routine components and arts that are claimed

11:32:49  22   here.  Because of that, there's no factual issues for this

11:32:52  23   Court to decide at the step two analysis.  And for these

11:32:55  24   reasons, it's appropriate at this time to rule that this

11:33:00  25   patent is patent ineligible and grant Stitch's motion to

11:33:04  1   dismiss.

11:33:05  2            THE COURT:  I'm correct in thinking that the

11:33:08  3   Section 101 issue was actually brought up with the patent

11:33:11  4   examiner for this before this patent issued?

11:33:14  5            MR. MICHALEK:  That's correct, Your Honor.

11:33:15  6            THE COURT:  And so what do you think about that?

11:33:18  7            MR. MICHALEK:  Yeah.  I think a couple things.

11:33:21  8   First off, if I read from the Complaint, the rejection was

11:33:25  9   made in June 2016.

11:33:28 10            First off, the Patent Office and a single

11:33:31 11   examiner is not acting as an attorney.  And the Patent

11:33:33 12   Office is not acting as a court of law, so there's little,

11:33:36 13   if any, precedential value to that patent opinion or that

11:33:40 14   rejection.

11:33:40 15            THE COURT:  Did the patent examiner say why he

11:33:43 16   or she was rejecting the 101, or saying that I guess it was

11:33:50 17   ex parte, why it was the 101 was overcome?

11:33:58 18            MR. MICHALEK:  I believe that the examiner did

11:34:00 19   have a reasoning.  I don't think that was submitted with the

11:34:03 20   papers, so I don't have a specific answer to that question

11:34:06 21   right now.  But the fact of the matter is that it was.

11:34:09 22   There was a rejection, and it was overcome.

11:34:12 23            But I think an important point to recognize is

11:34:15 24   that the body, the examiner at that time in June 2016, did

11:34:19 25   not have the benefit of subsequent information.  Since that

11:34:23 1    time, the Patent Office has issued several instructions on

11:34:27 2    subject matter guidelines that could have helped the

11:34:29 3    examiner.  The Federal Circuit has issued several opinions,

11:34:32 4    especially opinions directed to this idea of data

11:34:35 5    manipulation, some of which we've already discussed today.

11:34:39 6    And the patent examiner did not have the benefit in helping

11:34:42 7    to do his job of these opinions.

11:34:44 8            And, ultimately, the task that Stitch is

11:34:47 9    bringing before the Court today is asking for a ruling of

11:34:51 10   patent invalidity based on the current state of the law

11:34:54 11   which includes all relevant body of case law that exists for

11:35:01 12   101 at this present time.  And if I can just add one more

11:35:05 13   point to that, Judge, is that we took a look, and there is

11:35:09 14   precedent for the Federal Circuit finding patents invalid

11:35:14 15   even after they have --

11:35:16 16           THE COURT:  Yeah.  You don't need to go into

11:35:17 17   that.

11:35:18 18           MR. MICHALEK:  Okay.  So, again, you know, for

11:35:20 19   those reasons, we believe that, you know, such a rejection

11:35:23 20   is tenuous and ultimately not helpful in a situation like

11:35:27 21   this.

11:35:27 22           THE COURT:  Okay.  Thank you.

11:35:40 23           MR. JOHNSON:  Good morning, Your Honor.  Jay

11:35:53 24   Johnson for Finnavations.

11:35:54 25           THE COURT:  Good morning.

11:35:57  1          MR. JOHNSON:  Your Honor, I'd first like to

11:36:00  2  address some of the points made by defendants' counsel and

11:36:03  3  then make some of my own points.

11:36:07  4          THE COURT:  Okay.

11:36:08  5          MR. JOHNSON:  So in the exchange with the

11:36:15  6  defendants' counsel and Your Honor, we talked about

11:36:19  7  Payoneer's allegation of abstract idea was literally "a

11:36:30  8  financial assistant."  Stitch's allegation was, depending on

11:36:33  9  what time we were talking about in the conversation, it was

11:36:36 10  either "gathering information, or data manipulation, or

11:36:43 11  possibly bookkeeping."

11:36:44 12          THE COURT:  Yeah, that was my contribution

11:36:46 13  because --

11:36:47 14          MR. JOHNSON:  And I noticed that they jumped

11:36:49 15  right on that, Your Honor.  In any event, any of these

11:36:54 16  characterizations of abstract idea go, we would say,

11:37:01 17  strictly against what the Federal Circuit has admonished

11:37:04 18  against which is boiling down a claim and stripping the

11:37:07 19  claim down to an extreme so far that the exceptions for 101

11:37:13 20  swallow the rule.

11:37:14 21          THE COURT:  Well, so what do you think the

11:37:19 22  non-abstract idea of these claims is?

11:37:21 23          MR. JOHNSON:  That's one of our points, Your

11:37:24 24  Honor, is that we don't think you can get an abstract idea.

11:37:31 25  The way that that question is phrased almost presumes that

11:37:36 1    there is an abstract idea.  Simply because there's a 101

11:37:40 2    motion, we have to have an abstract idea.

11:37:42 3           Well, let's now just characterize it.  And let's

11:37:44 4    do it in a way that whatever that abstract idea is, it's a

11:37:48 5    basic building block.

11:37:50 6           THE COURT:  Well, let me stop you here.  What's

11:37:53 7    the invention here?

11:37:53 8           MR. JOHNSON:  Well, the heart of the invention

11:37:55 9    is taking data from a financial transaction and having that

11:37:59 10   received at one component in the system, the financial

11:38:03 11   assistant, and then adding data to that, and changing the

11:38:07 12   data structure from a first structure to a second structure.

11:38:13 13   The first structure being compatible with the online

11:38:16 14   transaction.

11:38:16 15          THE COURT:  So when you say "changing the data

11:38:18 16   structure," what you mean is taking it from one place and

11:38:21 17   putting it another place; right?

11:38:23 18          MR. JOHNSON:  No, Your Honor.

11:38:24 19          THE COURT:  Well, what do you mean then?

11:38:26 20          MR. JOHNSON:  And it's enabling, taking the data

11:38:28 21   from one place and putting it in another.  It's not

11:38:31 22   literally transmitting the data.  That's not all that's

11:38:34 23   being done.

11:38:34 24          THE COURT:  Well, it's you have something in one

11:38:36 25   program, and you're putting it in another program?

11:38:39 1                    MR. JOHNSON:  Yes, with the slight change of

11:38:43 2      you're enabling that to take place --

11:38:45 3                    THE COURT:  Okay.

11:38:46 4                    MR. JOHNSON:  -- because one program --

11:38:47 5                    THE COURT:  And so what does "enabling that to

11:38:49 6      take place" mean?

11:38:51 7                    MR. JOHNSON:  Well, one program deals with data

11:38:54 8      in a first structure.  That's the way that program deals

11:38:58 9      with that data.  The other program doesn't.

11:39:02 10                   So we have to change the structure from a first

11:39:05 11     data structure to a second data structure --

11:39:07 12                   THE COURT:  Does the --

11:39:08 13                   MR. JOHNSON:  -- so the program can deal with

11:39:10 14     it.

11:39:10 15                   THE COURT:  Does the claim say how you deal with

11:39:12 16     it?

11:39:12 17                   MR. JOHNSON:  No.  The claim itself does not say

11:39:14 18     how you deal with it.

11:39:15 19                   THE COURT:  Does the specification say how you

11:39:18 20     do it?

11:39:18 21                   MR. JOHNSON:  The specification discusses some

11:39:21 22     of that.  It doesn't give every last detail, nor is that

11:39:25 23     required by the claims.

11:39:26 24                   THE COURT:  Well --

11:39:29 25                   MR. JOHNSON:  And to the extent that that might

11:39:30 1    be an issue, that would be an issue for enablement under

11:39:36 2    Section 112, not a 101 motion.

11:39:39 3            THE COURT:  All right.  So I take it from your

11:39:44 4    briefing that you agree Claim 9 is a representative claim?

11:39:48 5            MR. JOHNSON:  We do, Your Honor.

11:39:49 6            THE COURT:  And do I also take it from your

11:39:51 7    briefing that you don't think any claim construction is

11:39:54 8    necessary to decide this issue?

11:39:56 9            MR. JOHNSON:  We don't think claim construction

11:39:58 10   is necessary.

11:40:00 11           THE COURT:  Okay.

11:40:02 12           MR. JOHNSON:  I mean, although depending on what

11:40:09 13   the considerations are as far as the step two of the

11:40:12 14   analysis under Alice, claim construction could be helpful.

11:40:18 15           THE COURT:  Okay.  So what do you think the

11:40:23 16   person of ordinary skill in the art for this patent is?

11:40:27 17           MR. JOHNSON:  I think the person of ordinary

11:40:31 18   skill in the art would be a software programmer that has

11:40:34 19   experience in developing software that's used in financial

11:40:41 20   accounting and transaction systems.

11:40:47 21           THE COURT:  So --

11:40:48 22           MR. JOHNSON:  Probably a computer engineer.

11:40:52 23   Somebody who would understand, okay, if I've got to change a

11:40:58 24   data structure from a first structure to a second structure,

11:41:02 25   I'm going to write the code for that.

11:41:03  1        THE COURT:  So when you say change the data

11:41:05  2   structure from the first to the second, the premise here is

11:41:11  3   you have like two different data structures.  One is, let's

11:41:15  4   say, the online shopping data structure of -- though it may

11:41:20  5   not have been around then -- Amazon, and then the other is

11:41:23  6   you have the financial program data structure, for example,

11:41:27  7   Quicken; right?

11:41:28  8        MR. JOHNSON:  The management program.

11:41:29  9        THE COURT:  You're talking about two different

11:41:31 10   data structures as a concrete example; right?

11:41:34 11        MR. JOHNSON:  Right.

11:41:34 12        THE COURT:  And so the changing the data

11:41:36 13   structure is taking some piece of data as in, say, the

11:41:41 14   Amazon program and making it understandable in that Quicken

11:41:49 15   program; right?

11:41:50 16        MR. JOHNSON:  Correct.

11:41:50 17        THE COURT:  And you started to say or maybe you

11:41:58 18   did say that the specification gives you some hint as to how

11:42:02 19   to do that.  Can you point me to where?

11:42:05 20        MR. JOHNSON:  Okay.  For example, Column 2,

11:42:39 21   Lines 1 through 3.  And this is not the specifics of code,

11:42:44 22   but something that I think a person of ordinary skill in the

11:42:46 23   art would understand how to deal with it and move forward.

11:42:49 24        THE COURT:  What does it say?

11:42:50 25        MR. JOHNSON:  "A related objective of the

11:42:52 1   invention is creation of a transaction data file that can be

11:42:56 2   used to update information stored on a personal financial

11:42:59 3   management program."

11:43:03 4           And then on down to columns, or I'm sorry, Lines

11:43:11 5   33 to 39, "The user is allowed to associate additional data

11:43:16 6   with the transaction data inputting a notes field and a

11:43:20 7   category.  Upon entering the desired information, the

11:43:23 8   transaction data is submitted to a personal financial

11:43:25 9   management program."

11:43:26 10          And then, I don't have the specific lines, but

11:43:30 11  associated with that is the discussion of changing the data

11:43:35 12  structure from one structure to another such that you can

11:43:39 13  deal with the online transaction data and then be able to

11:43:46 14  move it to the personal financial management program.

11:43:53 15          THE COURT:  But I take it you're not saying the

11:43:58 16  invention here is or even in the event that the idea is --

11:44:07 17  let me hold that thought for a minute.  So how is what is

11:44:12 18  described about taking an Amazon transaction and putting it

11:44:18 19  in a financial management system with a note added to it,

11:44:25 20  how is that any different than business bookkeeping that's

11:44:30 21  been done at least since the 1920s?

11:44:33 22          MR. JOHNSON:  Well, business bookkeeping doesn't

11:44:36 23  change the structure of the data.

11:44:39 24          THE COURT:  Well --

11:44:40 25          MR. JOHNSON:  They might put one piece of data

11:44:44  1   in another location or a different location, but it's not

11:44:48  2   changing the structure of the data itself.  You can't do

11:44:52  3   manually what the computers in the system are doing with the

11:44:57  4   data structure.  And this is the exact --

11:44:59  5          THE COURT:  So the difference between the

11:45:02  6   invention here and what's been done for at least 90 years is

11:45:11  7   that before you would take a number from some kind of

11:45:19  8   financial record and write it down in a bookkeeping entry,

11:45:26  9   and the number, I guess, would be the same number in both

11:45:30 10   places.  Whereas here, it's written in code one place.  It

11:45:35 11   has to be converted to a different kind of code in the

11:45:39 12   second place?

11:45:40 13          MR. JOHNSON:  Very, very close to the point I've

11:45:44 14   been making.  The changing a data structure in a computer

11:45:50 15   system doesn't just happen, and it's not something that you

11:45:55 16   do manually, or could do manually, or have done manually

11:45:59 17   previously.

11:45:59 18          THE COURT:  So it's your position any time you

11:46:02 19   transform data, then therefore, that cannot be a patent

11:46:07 20   ineligible claim?

11:46:13 21          MR. JOHNSON:  I don't know that we'd go so far

11:46:15 22   as to say that.  I mean, certainly there is the body of case

11:46:17 23   law that is in the briefing that everybody knows about from

11:46:20 24   the Federal Circuit that says collection of data is

11:46:24 25   collecting data, transmitting data, storing data.  Possibly

11:46:30  1    I think one of the cases says analyzing data.

11:46:33  2            I mean, there's certain things that a computing

11:46:37  3    platform does that are generic with respect to data.  But

11:46:39  4    changing the data structure, the structure of the data

11:46:44  5    itself from a first structure to a second structure for

11:46:48  6    compatibility purposes here, compatibility purposes there is

11:46:52  7    not generic.  That's the point we're making.

11:46:56  8            THE COURT:  Okay.  I mean, but when you say the

11:46:59  9    point you're making, that's basically the hook on which

11:47:03 10    you're either going to rise or fall on this 101 motion?

11:47:07 11            MR. JOHNSON:  I'd say that's the primary hook.

11:47:09 12    I mean, there's --

11:47:10 13            THE COURT:  Okay.

11:47:11 14            MR. JOHNSON:  Excuse me.  Again, we have our

11:47:13 15    other elements that we refer to, but that's the one that I

11:47:16 16    think is most important and critical in this case.  And

11:47:20 17    there's no new argument that's being made here that wasn't

11:47:24 18    at issue with respect to the examination of this patent on

11:47:29 19    101.

11:47:30 20            THE COURT:  So while your colleague said that

11:47:32 21    the examination that discussed this 101 rejection was not

11:47:37 22    submitted with the papers in this case, do you agree with

11:47:42 23    that?

11:47:43 24            MR. JOHNSON:  I'm sorry.  I'm not fully

11:47:46 25    understanding the question.

| | |
|---|---|
| 11:47:47 1 | THE COURT:  So I guess the office action or |
| 11:47:50 2 | whatever it might be called where the examiner said, There's |
| 11:47:54 3 | no 101 problem here because of "X", whatever "X" might be, |
| 11:48:00 4 | that's not part of what was in the appendix to the briefs |
| 11:48:03 5 | here? |
| 11:48:04 6 | MR. JOHNSON:  That's true, Your Honor. |
| 11:48:06 7 | THE COURT:  Would you like me to read that? |
| 11:48:08 8 | MR. JOHNSON:  We absolutely would love for you |
| 11:48:11 9 | to read that if you would like to consider that as part of |
| 11:48:15 10 | your -- |
| 11:48:16 11 | THE COURT:  Well, I just think because I take |
| 11:48:18 12 | what one of your colleagues said is the examiner is not a |
| 11:48:23 13 | lawyer, and this is mostly a legal question.  But, |
| 11:48:28 14 | nevertheless, the examiner is a trained individual who might |
| 11:48:35 15 | have some insight as saying that's relevant to whether or |
| 11:48:39 16 | not there's inventive concept or that there's no abstract |
| 11:48:45 17 | idea here. |
| 11:48:46 18 | I mean, so I take it you have seen whatever it |
| 11:48:54 19 | is that the examiner said; right? |
| 11:48:55 20 | MR. JOHNSON:  Yeah.  I don't think that there's |
| 11:48:57 21 | a whole lot there, Your Honor, as far as -- |
| 11:49:01 22 | THE COURT:  Well -- |
| 11:49:02 23 | MR. JOHNSON:  -- analysis detail. |
| 11:49:03 24 | THE COURT:  Could I ask that whatever is there, |
| 11:49:05 25 | that you submit it by, you know, the end of the week? |

| | | |
|---|---|---|
| 11:49:10 | 1 | MR. JOHNSON:  Sure. |
| 11:49:11 | 2 | THE COURT:  Okay.  I'd like you to do that. |
| 11:49:18 | 3 | MR. JOHNSON:  And we're going to submit that, |
| 11:49:20 | 4 | Your Honor, but the point that I was kind of going down |
| 11:49:23 | 5 | related to that is that the point we were making in our |
| 11:49:27 | 6 | briefing was that this very issue was considered by the |
| 11:49:33 | 7 | Patent Trademark Office.  And for defendants' counsel to say |
| 11:49:36 | 8 | that, you know, well, the patent examiner is not a lawyer, |
| 11:49:39 | 9 | patent examiners do analysis to have legal consequences all |
| 11:49:44 | 10 | the time. |
| 11:49:44 | 11 | THE COURT:  Well, no.  That's the reason why I |
| 11:49:47 | 12 | think that because I think that's, you know, part of the |
| 11:49:49 | 13 | intrinsic record, and that's part of the reason why it |
| 11:49:52 | 14 | seemed like something I ought to have in front of me.  You |
| 11:49:55 | 15 | know, I'm positive that I'm not bound by it, but it just |
| 11:50:05 | 16 | seemed to me like something that, at a minimum, it can't |
| 11:50:11 | 17 | hurt. |
| 11:50:11 | 18 | MR. JOHNSON:  We will absolutely get that to you |
| 11:50:13 | 19 | by the end of the week.  And, again, the point we were |
| 11:50:16 | 20 | making in our briefing is that when the patentee responded |
| 11:50:23 | 21 | to that rejection, the hook, if you will, is exactly that |
| 11:50:31 | 22 | element of the claim that we were talking about. |
| 11:50:34 | 23 | And it itself is not an insignificant element. |
| 11:50:39 | 24 | It's not a few words.  It's a paragraph, and it's got meat |
| 11:50:44 | 25 | on the bone.  So it's not -- |

11:50:46  1          THE COURT:  And what you're talking about now is

11:50:48  2    the transforming data structures?

11:50:50  3          MR. JOHNSON:  Yes, Your Honor.  Well, that and

11:50:52  4    the recognizing of the transaction data, the searching, the

11:50:57  5    receiving of it, the adding of data, the transforming of it

11:51:01  6    from a first structure to a second structure for

11:51:03  7    compatibility purposes from between here and there in the

11:51:07  8    system.

11:51:08  9          THE COURT:  Okay.

11:51:09 10          MR. JOHNSON:  So that's the big elephant in the

11:51:12 11    room for both the step one of an abstract idea and step two

11:51:19 12    of whether, even if there is an abstract idea, whether that

11:51:22 13    abstract idea is transformed into patent ineligible subject

11:51:26 14    matter.

11:51:26 15          THE COURT:  So your colleagues on the other side

11:51:29 16    have given me, not quite a laundry list, but you know, four

11:51:34 17    different cases that they thought were in some way germane

11:51:38 18    to the argument here.  If you tell me DDR is your case, you

11:51:48 19    don't need to say anymore.

11:51:50 20          But do you have something?  I mean, what is the

11:51:58 21    best case for you, in your opinion?

11:52:06 22          MR. JOHNSON:  I don't know.  It's probably a

11:52:08 23    combination of three.  It would be Alice, DDR and Enfish.

11:52:17 24          THE COURT:  Okay.  Hold on a minute.

11:52:43 25          All right.  Anything else you want to tell me?

11:52:45 1       MR. JOHNSON:  Not unless Your Honor has other

11:52:47 2 questions.

11:52:47 3       THE COURT:  Right now, I don't.  So thank you.

11:52:50 4       Why don't I get a brief response from one or the

11:52:53 5 other of the defendants.

11:52:56 6       MR. JOHNSON:  All right.  Thank you, Your Honor.

11:52:57 7       THE COURT:  Thank you.

11:52:59 8       MR. VINCENT:  Judging from Your Honor's

11:53:07 9 questions, you understand my position, so I won't belabor

11:53:10 10 the point.  One thing I would point out to help the Court,

11:53:11 11 there was some discussion about which particular bucket or

11:53:15 12 vein of Federal Circuit case law that this would fall into.

11:53:18 13       It actually falls into two.  That would be the

11:53:23 14 fundamental economic practices that are being claimed in the

11:53:27 15 abstract and data manipulation.  So that's why it may be a

11:53:30 16 little confusing here because this patent is egregiously

11:53:33 17 claimed.  It actually goes into two categories.

11:53:35 18       So for the fundamental economic practices, this

11:53:37 19 is Alice and Bilski.  And for data manipulation, our best

11:53:41 20 cases are Content Extraction, which I discussed in the

11:53:44 21 slide, and Electric Power which Stitch's counsel discussed.

11:53:49 22       I have nothing further if you have nothing

11:53:51 23 further.

11:53:51 24       THE COURT:  Okay.

11:53:53 25       MR. VINCENT:  Thank you.

11:53:53  1              THE COURT:  All right.  Mr. Michalek, since we

11:53:56  2    have a few minutes left here, what would you like to say?

11:54:05  3              MR. MICHALEK:  Thank you, Judge.  Just a couple

11:54:06  4    of points.

11:54:07  5              We had a discussion about this idea of somehow

11:54:10  6    changing data within the claim.  I have two points there.

11:54:13  7              First of all, there is no limitation that

11:54:15  8    requires changing of data in Claim 9.  This is just

11:54:19  9    discussion.  When you actually look at Claim 9, it talks

11:54:22 10    about storing transaction data in a first data structure.

11:54:25 11              And then it says storing transaction data in a

11:54:27 12    second data structure.  So that changing element is not

11:54:30 13    present in the actual claim, and it's not in the

11:54:33 14    specification.  There's no discussion of how this so-called

11:54:36 15    changing would occur.

11:54:37 16              And then the second point is that even if it was

11:54:41 17    that squarely into the realm of the Federal Circuit case law

11:54:44 18    that we've been talking about with respect to manipulating

11:54:47 19    data, you know, we're storing data, or we're changing data

11:54:51 20    in some abstract way; and therefore, it's not going to make

11:54:54 21    the patent ineligibility standard.

11:54:56 22              And then my final point is that Your Honor gave

11:54:58 23    the example about the 1920s bookkeeping, and I think really

11:55:04 24    the finality there, if we're looking at a transaction, you

11:55:07 25    go out and buy something at the store.  And then the

11:55:11  1   changing of data or the storing in different data structures

11:55:14  2   from that example would really just be, you know, in one

11:55:16  3   situation, you write down the price of bread that you bought

11:55:18  4   in a ledger.  And then you take the name of the bread or the

11:55:22  5   name of the store you went to, and you write it down in a

11:55:26  6   spreadsheet or a different book, and then you have your two

11:55:28  7   data structures.  So it really is something that is well

11:55:32  8   known from a manual from a worldwide perspective.

11:55:34  9          Nothing further, Judge.

11:55:35 10          THE COURT:  Okay.  All right.  So I will take it

11:55:40 11   under advisement.  I will look forward to getting some

11:55:43 12   submissions from you.  No need to argue, but just whatever

11:55:47 13   part of the prosecution record history addresses the 101

11:55:52 14   issue, it might be worthwhile to exchange a phone call with

11:56:00 15   defense counsel, just make sure you both agree on what that

11:56:02 16   is before you submit it.  But I anticipate that we'll get

11:56:09 17   some decision on this once we've got all the materials

11:56:12 18   before too much time passes.

11:56:14 19          All right.

11:56:16 20          MR. STAMOULIS:  Thank you, Your Honor.

11:56:16 21          MR. ANDERSON:  Thank you, Your Honor.

11:56:18 22          MS. YING:  Thank you, Your Honor.

11:56:18 23          THE COURT:  Well, thank you very much for your

11:56:19 24   time and attention this morning.  We'll be in recess.

         25          (Court was recessed at 11:56 a.m.)

1          I hereby certify the foregoing is a true and accurate

2     transcript from my stenographic notes in the proceeding.

3

4                                    /s/ Heather M. Triozzi
                                     Official Court Reporter
5                                     U.S. District Court

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25