# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

FINNAVATIONS LLC,

       Plaintiff,

   v.

PAYONEER INC.,

       Defendant.

C.A. No. 1:18-cv-00444-RGA

## PAYONEER INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR EXCEPTIONAL CASE

FISH & RICHARDSON P.C.
Jeremy D. Anderson (Bar No. 4515)
222 Delaware Avenue, 17th Floor
Wilmington, Delaware 19801
(302) 652-5070 (Telephone)
(302) 652-0607 (Facsimile)
janderson@fr.com

Neil J. McNabnay
David B. Conrad
Ricardo J. Bonilla,
Michael A. Vincent
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
mcnabnay@fr.com
conrad@fr.com
rbonilla@fr.com
vincent@fr.com

**COUNSEL FOR DEFENDANT
PAYONEER INC.**

## <u>TABLE OF CONTENTS</u>

I.   ARGUMENT ................................................................................................................. 1

    A.    Patent issuance is not a license to sue recklessly. ................................................. 1

    B.    Any ambiguity in § 101 law does not reach these claims. .................................... 3

    C.    Precedent supports an award of Payoneer's fees. ................................................. 5

    D.    An award of fees is necessary to deter similarly baseless claims. ........................ 6

II.   CONCLUSION .......................................................................................................... 7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
 No. 4:17-cv-5928, 2018 WL 3328164 (N.D. Cal. July 6, 2018) ..............................................2

*Commil USA, LLC v. Cisco Systems, Inc.*,
 135 S. Ct. 1920 (2015)............................................................................................................7

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
 776 F.3d 1343 (Fed. Cir. 2014)..............................................................................................3

*eDekka LLC v. 3Balls.com, Inc.*,
 No. 2:15-cv-541, 2015 WL 9225038 (E.D. Tex. Dec. 17, 2015) ............................................6

*Inventor Holdings, LLC v. Bed Bath Beyond, Inc.*,
 876 F.3d 1372 (Fed. Cir. 2017)......................................................................................2, 4, 5

*My Health, Inc. v. ALR Techs., Inc.*,
 No. 2:16-cv-00535, 2017 WL 6512221 (E.D. Tex. Dec. 19, 2017) ........................................5

This case is exceptional because Finnavations asserted objectively ineligible claims that were directed to a 7,000-year-old accounting principle performed on a generic computer using conventional data manipulation techniques. Finnavations' opposition does not refute the ineligibility of its claims and offers no convincing argument for why it should not have known the claims were ineligible. Finnavations and its counsel have a duty to critically analyze patent claims before asserting them in litigation, and they failed that duty here. Despite having its claims rejected four times in prosecution, Finnavations nonetheless pressed forward with this lawsuit while ignoring substantial precedent confirming the claims' ineligibility. Accordingly, Payoneer respectfully requests that the Court grant its motion, find the case to be exceptional, and award its attorneys' fees incurred while defending itself in this needless litigation.

## I.    ARGUMENT

### A.    Patent issuance is not a license to sue recklessly.

Finnavations is unconvincing in its argument that an allowance after four § 101 rejections provided adequate assurance that its claims were eligible. The standard it effectively proposes would permit litigants to be relieved of any obligation to independently assess the merits of their claims as long as they can convince the Patent Office to enter a notice of allowance.

This cannot be right. Patent examiners are not lawyers and their determinations of legal issues cannot be relied upon blindly. Instead, examiners are gatekeepers who provide an important initial determination of patentability, but whose limited resources necessitate a robust system of review by Article III courts. Issuance by the Patent Office is but the first step in confirming that a patent is eligible and enforceable, and such issuance does not carry with it the unassailable mark of eligibility that Finnavations suggests. *See Ultramerical, Inc. v. Hulu*, LLC, 772 F.3d 709, 721 (Fed. Cir. 2014) (Mayer, J., concurring) ("[W]hile a presumption of validity

1

attaches in many contexts, no equivalent presumption of eligibility applies in the section 101

calculus.") (citation omitted).

 To the contrary, Finnavations had a duty to analyze its patent critically even though its

claims survived prosecution. The *Cellspin* case is instructive. There, several defendants moved

for a finding of an exceptional case after the court had granted their motion to dismiss and

invalidated all of plaintiff's asserted claims. *See Cellspin Soft, Inc. v. Fitbit, Inc.*, 4:17-cv-5928,

2018 WL 3328164, at *1 (N.D. Cal. July 6, 2018). In opposing defendants' motion, the plaintiff

argued that its patents were entitled to a presumption of eligibility, especially because several of

the patents were issued after the Supreme Court's decision in *Alice*. *Id.* at *3. The court

disagreed, finding patent litigants have a duty to analyze their patents critically and that the

plaintiff had failed this duty:

> [P]laintiff argues that it should not be forced to adjudicate the
> validity of its own patent and can rely on the courts to serve in that
> role. ***Cellspin cannot hide behind its own refusal to analyze its
> patents critically.*** Lawyers routinely evaluate the viability of
> contracts and strength of claims and thereupon counsel clients to act
> responsibly. To do otherwise unnecessarily burdens the courts and
> inflicts significant costs to the opposing parties.

*Id.* at *4 (internal citations omitted) (emphasis added). Here, Finnavations argues that it could

sue with impunity because it was entitled to presume its claims were patent-eligible. Opp. at 9.

Not so. Even if there was a presumption of validity on patent-eligibility, Finnavations was

required to analyze whether the presumption would be overcome when challenged. Much like in

*Cellspin*, Finnavations had a duty to critically assess its patent before dragging an accused

infringer into court—even though the claims were allowed by the Patent Office. It did not do so,

instead making objectively meritless arguments in defense of eligibility. That assertion, alone, is

sufficient to support a finding of exceptionality. *See Inventor Holdings, LLC v. Bed Bath Beyond,

Inc.*, 876 F.3d 1372, 1377 (Fed. Cir. 2017).

2

Moreover, Finnavations' duty to critically assess its claims exceeded that of the *Cellspin* plaintiff because Finnavations was repeatedly informed that its claims had serious eligibility issues. The multiple rejections on § 101 grounds that Finnavations touts as supporting its reasonableness actually do the opposite: ***four separate rejections*** on eligibility grounds should have given Finnavations pause before asserting the eventually-issued claims in litigation. Instead, Finnavations took the Patent Office's ultimate allowance as a bulletproof seal of approval and pressed on without looking back.

## B.   Any ambiguity in § 101 law does not reach these claims.

By collecting general quibbles with the law, Finnavations would have the Court believe that "there is little consensus as to whether a [given] claim is directed to an abstract idea." Opp. at 15. However, this Court had no problem recognizing—***in this particular case***—that "the claims of the '755 Patent are ***plainly*** directed at a patent ineligible concept." D.I. 22 (Order) at 10 (emphasis added). Whatever uncertainty Finnavations complains about generally in patent law, it was not a hindrance to the Court in finding ***these*** claims patent-ineligible when it put ***this*** particular patent under the microscope. *See Inventor Holdings*, 876 F.3d 1372 ("[W]hile we agree with [plaintiff] as a general matter that it was and is sometimes difficult to analyze patent eligibility under the framework prescribed by the Supreme Court in *Mayo*, there is no uncertainty or difficulty in applying the principles set out in *Alice* to reach the conclusion that the [patent-in-suit]'s claims are ineligible.").

In reality, despite any shortcomings the two-step *Alice* test may have in deciding edge cases, this analytical framework has been consistent in invalidating claims just like those at issue here. Finnavations should have recognized, as this Court did, that "the '755 Patent is remarkably like the patent invalidated in *Content Extraction*" because its "attempt to claim bookkeeping

3

relies on the recognized abstract concept of data collection and recognition." *Id.* at 7 (citing

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343 (Fed.

Cir. 2014)). In *Content Extraction*, the Federal Circuit held that "the claims of the asserted

patents were drawn to the abstract idea of:

> 1) collecting data,
> 2) recognizing certain data within the collected data set, and
> 3) storing that recognized data in a memory."

*Content Extraction*, 776 F.3d at 1347. Likewise, Finnavations' claims recite the abstract steps of:

> 1) searching a set of transmitted data,
> 2) determining whether the searched data comprises transaction data, and
> 3) copying and storing the transaction data and additional transaction data.

*See* '755 Patent, claim 9. Finnavations should have known that its claims were directed to an

abstract idea.

The result of step two of the eligibility analysis should have also been apparent because

"[t]he predominant software functionality claimed in the '755 Patent—recording financial data—

is identical to the function found to be non-inventive by the Supreme Court in *Alice*." Order at 9.

Because "[t]he '755 Patent recites the same electronic recordkeeping and data collection

functionality as the patent at issue in *Alice*," Finnavations could not have reasonably believed its

claims were patent-eligible. *See id.*

The case law thus dictates the inescapable conclusion that Finnavations' claims were

patent-ineligible. Although the state of § 101 law may allow for debate in the grey areas between

precedent, that latitude does not apply to Finnavations' claims, which this Court concluded were

"remarkably like" and "identical" to previously invalidated claims. *See id.* at 7, 9. Finnavations

cannot cite imperfections in the two-step test's ability to clearly decide ***every*** case as evidence

that the test cannot clearly decide ***any*** case.

4

C.      **Precedent supports an award of Payoneer's fees.**

Finnavations' attempt to distinguish direct precedent is ineffective. Much like its effort to

distance itself from inconvenient cases that found patent ineligibility, here too Finnavations tries

to distract with inconsequential differences while avoiding the direct similarities.

*Inventor Holdings* is on-point, as it involved the assertion of claims directed to a

fundamental economic practice practiced on a generic computer. *See Inventor Holdings*, 876

F.3d at 1379. Contrary to Finnavations' contention that "[t]he *Inventor Holdings* claims did not

require computer components" (Opp. at 17), representative claim 8 of the *Inventor Holdings*

patent did indeed require the use of a "point-of-sale system," which is a generic computing

system used in retail. *Id.* at 1374. In addition, Finnavations seeks to portray the *Inventor*

*Holdings* patent as preemptive of a wide array of "human activity that did not require a

computer" (Opp. at 17), yet the Federal Circuit never endorsed this view. Rather, the court

recognized that "the patentee [was] attempting to broadly monopolize an abstract idea as

implemented using generic computer technology." *Id.* at 1379. That is the same situation

implicated by Finnavations' claims. As with *Inventor Holdings*, Finnavations' claims were

directed to a fundamental economic practice implemented using generic computer technology.

*My Health* is instructive because the district court recognized in 2017, months before

Finnavations filed its case, that there were already "numerous cases invalidating claims directed

to information collection and analysis." *My Health, Inc. v. ALR Techs., Inc.*, 2:16-cv-00535,

2017 WL 6512221, at *4 (E.D. Tex. Dec. 19, 2017). Had Finnavations done any presuit analysis

of its patent, it would have found that courts had already determined that such claims were not

patent-eligible.

5

*eDekka* is difficult for Finnavations to distinguish because the claims are so similar to its own. The patent asserted in *eDekka* related to "storing and labeling information" in a "data structure." *eDekka LLC v. 3Balls.com, Inc.*, 2:15-cv-541, 2015 WL 9225038 at *1–*2 (E.D. Tex. Dec. 17, 2015). The court held that "[c]laim 1 essentially describes the common process of receiving, labeling, and storing information," which is the essence of Finnavations' claims. *Id.* at *2.

Remarkably, Finnavations cites *SAP America* as an example of negligence by a patent owner who was "specifically warned by the USPTO that it looked very unlikely that the claims are directed toward patentable subject matter." Opp. at 18. How else could Finnavations have interpreted four § 101 rejections other than as a warning that the claims were questionable as directed toward patentable subject matter? Although Finnavations persisted to an allowance, it was unquestionably on notice that its claims were of dubious eligibility.

**D.    An award of fees is necessary to deter similarly baseless claims.**

Finnavations' parade of horribles is just an attempt to scare the Court from reaching the just outcome, and is inapplicable to this case. Its prophecy of timid plaintiffs is based on a faulty premise that an award of fees would necessarily mean that (1) the USPTO is incompetent, and (2) all of § 101 law is settled and clear. Opp. at 19. This is a false dichotomy. First, ruling counter to a USPTO determination is ordinary and not indicative of any incompetence by the Patent Office. Every finding of ineligibility under § 101 in an Article III court has occurred after a patent examiner first deemed the claims eligible. As explained above, the Patent Office has limited resources, so adversarial review by a court during litigation—where millions of dollars may be at stake—may be the first rigorous test of the patent. This is how the system is intended to operate because the Patent Office was never meant to be the final arbiter of patent eligibility.

Second, although § 101 law is admittedly flexible in certain areas where the courts have not made clear pronouncements, claiming economic practices implemented on a generic computer is not such an area. Finding this case exceptional does not mean that all § 101 rejections will support fee awards. No, this is a limited case specific to a type of claim that has for years clearly been outside the protections of the patent system.

Finally, the Court should consider the practical effect of denying Payoneer's motion and what signal that would send to future litigants. Even though Payoneer has been completely successful thus far in the courtroom, if its request for fees is denied, the ruling will only encourage meritless cases to be filed. It tells plaintiffs (and especially their counsel): you don't need to do your own independent analysis of the merits. By choosing to stand on its rights, Payoneer has incurred significant expense to secure what is right. Justice should not be a pursuit reserved for those able to pay for moral victories. Yet, if this Court declines to award fees for defending against such plainly ineligible claims, then what lesson do future defendants take? Settlement will often be less expensive than engaging with the judicial system, so if there is no hope of shifting fees, then assertions of such ineligible claims will proliferate. As the Supreme Court has instructed in scenarios such as this: "[D]istrict courts have the authority and responsibility to ensure frivolous cases are dissuaded." *Commil USA, LLC v. Cisco Systems, Inc.*, 135 S. Ct. 1920, 1930–1931 (2015).

## II.    CONCLUSION

For the foregoing reasons, Payoneer respectfully requests that the Court grant its Motion, find this case exceptional, and award Payoneer its attorneys' fees of $121,211.50. *See* Anderson Supp. Decl. (attached as Ex. A).

7

Dated:  January 30, 2019

Respectfully submitted,
FISH & RICHARDSON P.C.

By:  */s/ Jeremy D. Anderson*
    Jeremy D. Anderson (Bar No. 4515)
    222 Delaware Avenue, 17th Floor
    Wilmington, Delaware 19801
    (302) 652-5070 (Telephone)
    (302) 652-0607 (Facsimile)
    janderson@fr.com

    Neil J. McNabnay
    David B. Conrad
    Ricardo J. Bonilla
    Michael A. Vincent
    1717 Main Street, Suite 5000
    Dallas, Texas 75201
    (214) 747-5070 (Telephone)
    (214) 747-2091 (Facsimile)
    mcnabnay@fr.com
    conrad@fr.com
    rbonilla@fr.com
    vincent@fr.com

**COUNSEL FOR DEFENDANT
PAYONEER INC.**